[No. 49674–9. En Banc. May 17, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. SHERRIE LYNN ALLERY, *Appellant.*

*Ellen Yaroshefsky* and *Gibbs, Douglas, Theiler, Yaroshefsky & Drachler,* for appellant.

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Chief Criminal Deputy,* for respondent.

*Judith A. Bendor* on behalf of Northwest Women's Law Center, amicus curiae for appellant.

DORE, J.—Defendant Sherrie Allery appeals her conviction for the second degree murder of her husband, Wayne Allery. She assigns error to the trial court's instruction on self–defense and evidentiary rulings excluding expert testimony on the battered woman syndrome. She further contends the trial court erred in failing to instruct the jury on the defendant's duty to retreat.

We hold the trial court's instructions were defective in explaining the law of self–defense. We also hold expert testimony on the battered woman syndrome is admissible to show the defendant's fear of imminent danger at the time of the shooting. We reverse and remand for a new trial.

I

The defendant married Wayne Allery in 1975. Shortly after the marriage, she began to experience what was to become a consistent pattern of physical abuse at the hands of her husband. She suffered periodic pistol whippings, assaults with knives, and numerous beatings from her husband's fists throughout the marriage. In 1978, Mrs. Allery

was hospitalized after her husband struck her on the head with a tire iron. During the last year of their marriage, the beatings increased in frequency and severity. Finally, on October 24, 1980, Mrs. Allery initiated divorce proceedings and served her husband with restraining orders.

The shooting occurred early in the morning of November 1, 1980. The defendant testified that she entered her house late at night not expecting to find her husband there because of the restraining orders. She bolted the door locked when she entered. As she moved through the house and into the kitchen, a light came on by the couch. Mr. Allery was lying there and said to her, "I guess I'm just going to have to kill you sonofabitch. Did you hear me that time?" Report of Proceedings, at 611.

The defendant went into the bedroom and tried unsuccessfully to open the window to escape. She heard a metallic noise from the kitchen and thought Mr. Allery was getting a knife. While in the bedroom, the defendant loaded one shell into a shotgun. She moved from the bedroom to the kitchen area and fired the shot that killed her husband while he remained lying on the couch.

## II

The trial court gave only one instruction on self–defense:

Homicide is justifiable when committed in the lawful defense of the slayer when the slayer, even though mistaken, has reasonable ground to believe that the person slain intends to inflict death or great bodily harm and there appears to the slayer to be imminent danger of such harm being accomplished.

The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer at the time.

It is a complete defense to a charge of homicide that it was justifiable.

If, after considering all of the evidence in the case, you have a reasonable doubt as to whether the killing was done in self defense, you must return a verdict of not guilty.

Report of Proceedings, at 765–66.

Defendant contends this instruction did not adequately convey the subjective standard applied to self–defense. The jury was not instructed to evaluate self–defense in the light of all circumstances known to the defendant, including those known before the homicide. *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977).[1] We agree.

The justification of self–defense must be evaluated from the defendant's point of view as conditions appeared to her at the time of the act. *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983). The jurors must understand that, in considering the issue of self–defense, they must place themselves in the shoes of the defendant and judge the legitimacy of her act in light of all that she knew at the time.

> All of these facts and circumstances should have been placed before the jury, to the end that they could put themselves in the place of the appellant, get the point of view which he had at the time of the tragedy, and view the conduct of the [deceased] with all its pertinent sidelights as the appellant was warranted in viewing it. In no other way could the jury safely say what a reasonably prudent man similarly situated would have done.

*State v. Wanrow, supra* at 235–36, quoting from *State v. Tribett,* 74 Wash. 125, 130, 132 P. 875 (1913).

In the instant case, the jury was instructed to consider the self–defense issue in terms of the defendant's reasonable apprehension of danger as circumstances appeared to

---

[1]Defendant proposed the following additional instructions on self–defense:

Instruction 9: "In judging Sherrie Allery's action you should attempt to place yourself in her position at the time of the incident. You should therefore consider her past and present knowledge, her beliefs, the relative size and strength of the participants, Wayne Allery's words and actions prior to the shooting, the history of their marital relationship, and all other factors bearing on the reasonableness of her actions and her apprehensions at the time as they appeared to her."

Instruction 17: "In judging Sherrie Allery's actions, you should attempt to place yourself, as a reasonable person, in her position at the time of the incident. You should therefore consider all the facts and circumstances known to her, including those known substantially before the incident."

her at the time of the incident. On its face, the instruction adequately conveys the subjective self–defense standard. *See* WPIC 16.02 (1977). However, standing by itself, without additional instructions from the trial court, this instruction does not make the subjective self–defense standard "'manifestly apparent to the average juror.'" *State v. Painter,* 27 Wn. App. 708, 713, 620 P.2d 1001 (1980), quoting *State v. Fischer,* 23 Wn. App. 756, 759, 598 P.2d 742 (1979). The instruction is inadequate because it does not instruct the jury to consider the conditions as they appeared to the slayer, taking into consideration all the facts and circumstances known to the slayer at the time and prior to the incident. *State v. Wanrow, supra.*

Defendant's theory of the case was that her intimate familiarity with her husband's history of violence convinced her that she was in serious danger at the time the shooting occurred. There was substantial evidence of the history of violence throughout the marriage between defendant and the victim. The jury should have been instructed to consider the self–defense issue from the defendant's perspective in light of all that she knew and had experienced with the victim. *State v. Wanrow, supra.*

III

At trial, defendant offered the expert testimony of Karil Klingbeil to explain the battered woman syndrome. Ms. Klingbeil was the founder of the sexual assault unit at Harborview Hospital in Seattle and has done extensive research in the areas of sexual assault and battered women. After extensive voir dire conducted out of the presence of the jury, the trial judge refused Klingbeil's testimony.

The record shows that Klingbeil would have described her professional analysis of the behavior and emotional patterns of women suffering from repeated physical abuse by their husbands and lovers. She would have testified that in her opinion defendant Allery displayed the behavioral and emotional characteristics of a battered woman. Defense counsel was very specific in explaining the purpose of

Klingbeil's testimony. It was offered to (1) explain the mentality and behavior of battered women generally, (2) to provide a basis from which the jury could understand why defendant perceived herself in imminent danger at the time of the shooting, and (3) to explain why a battered woman remains in a relationship that is both psychologically and physically dangerous.

ER 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The admissibility of expert testimony under this rule depends upon whether (1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact. *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978). *See generally* 5A K. Tegland, Wash. Prac., *Evidence* § 288, at 25 (2d ed. 1982).

The qualifications of Klingbeil were well established at trial and are not an issue here. The particular issue before us is whether the scientific understanding of the battered woman syndrome is sufficiently developed so that expert testimony on the syndrome is admissible.

Klingbeil testified that the battered woman syndrome is a recognized phenomenon in the psychiatric profession and is defined as a technical term of art in professional diagnostic textbooks. The syndrome is comprised of three distinct phases. In the first phase, tension mounts between the woman and her partner and minor abuse occurs. More serious violence follows and the woman experiences a sense of powerlessness to do anything to stop her husband. Psychologists describe a phenomenon known as "learned helplessness," a condition in which the woman is psychologically locked into her situation due to economic dependence on

the man, an abiding attachment to him, and the failure of the legal system to adequately respond to the problem. Finally, there is a temporary lull in the physical abuse inflicted on the battered woman, and she forgives her assailant, hoping that the abuse will not reoccur. *See generally* Eber, *The Battered Wife's Dilemma: To Kill or To Be Killed,* 32 Hastings L.J. 895 (1981).

We join with those courts which hold expert testimony on the battered woman syndrome admissible. *Smith v. State,* 247 Ga. 612, 277 S.E.2d 678 (1981); *Hawthorne v. State,* 408 So. 2d 801 (Fla. Dist. Ct. App. 1982); *Ibn–Tamas v. United States,* 407 A.2d 626 (D.C. 1979). We find that expert testimony explaining why a person suffering from the battered woman syndrome would not leave her mate, would not inform police or friends, and would fear increased aggression against herself would be helpful to a jury in understanding a phenomenon not within the competence of an ordinary lay person. *Smith v. State, supra.* Where the psychologist is qualified to testify about the battered woman syndrome, and the defendant establishes her identity as a battered woman, expert testimony on the battered woman syndrome is admissible. This evidence may have a substantial bearing on the woman's perceptions and behavior at the time of the killing and is central to her claim of self–defense. *State v. Anaya,* 438 A.2d 892 (Me. 1981).

Our holding today is in harmony with our decision in *State v. Wanrow, supra.* There we held that the jury must consider all the facts and circumstances known to the woman at the time of the killing in evaluating her claim of self–defense. To effectively present the situation as perceived by the defendant, and the reasonableness of her fear, the defense has the option to explain her feelings to enable the jury to overcome stereotyped impressions about women who remain in abusive relationships. It is appropriate that the jury be given a professional explanation of the battering syndrome and its effects on the woman through the use of expert testimony. *See* Cross, *The Expert as Educator: A*

*Proposed Approach to the Use of Battered Woman Syndrome Expert Testimony,* 35 Vand. L. Rev. 741 (1982).

## IV

Defendant also assigns error to the trial court's failure to instruct the jury that she had no duty to retreat at the time of the shooting.[2] No duty to retreat exists when one is feloniously assaulted in a place where she has a right to be. *State v. Hiatt,* 187 Wash. 226, 60 P.2d 71 (1936); *State v. Lewis,* 6 Wn. App. 38, 491 P.2d 1062 (1971). The State argues that no instruction was required because the defendant was in no danger when she shot her husband.

■ A party is entitled to an instruction when there is sufficient evidence in the record to support it. *State v. King,* 92 Wn.2d 541, 599 P.2d 522 (1979). Defendant testified that she was afraid and thought she was in danger when she entered her home and found her husband. She testified he threatened to kill her. Her testimony was sufficient to support the proposed instruction. The trial court erred in refusing to instruct the jury that defendant had no duty to retreat.

## V

Finally, defendant contends the trial court abused its discretion in admitting evidence concerning a 1975 child custody hearing in Montana involving her relationship with her children. The State argues defendant put her character in issue by testifying that she had been a faithful wife. The evidence of the child custody hearing was, therefore, admissible under ER 404(b).[3] We disagree.

---

[2] Defendant's proposed instruction 6 stated:

"It is lawful for a woman who is in a place where she has a right to be who has reasonable grounds for believing she is being attacked to stand her ground and defend herself from such an attack. She need not attempt to retreat."

[3] ER 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

 The 1975 custody hearings took place prior to defendant's marriage to Allery. The probative value of evidence otherwise admissible under ER 404(b) must be balanced against its prejudicial effect. ER 403. The central issue in this case concerned the relationship between the defendant and the victim as it contributed to the defendant's state of mind at the time of the shooting. The admission of evidence of the defendant's prior misconduct as a mother was irrelevant to this issue and highly prejudicial. Its admission constituted prejudicial error. *State v. Descoteaux,* 94 Wn.2d 31, 39, 614 P.2d 179 (1980).

CONCLUSION

We reverse defendant's conviction and remand for a new trial.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied August 7, 1984.