[No. 37149-5-I.   Division One.   April 8, 1996.]

THE STATE OF WASHINGTON, *Respondent* v.
GERALDINE HENDRICKSON, *Petitioner*.

*Harish Bharti, Horton Smith*, and *Felix, Zimmar &
Smith*, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Joe John A.
Solseng, Deputy*, for respondent.

BECKER, J. — Philip Lang died of a stab wound after a fight with his girlfriend, Geraldine Hendrickson. The State charged Hendrickson with felony murder. Hendrickson said she did not intend to kill Lang and did not remember inflicting the fatal blow. Persuaded that Hendrickson's testimony established only a defense of accident, the trial court took the issue of self-defense out of the case. We hold the testimony was sufficient to support Hendrickson's claim of self-defense.

## I.

At trial, Hendrickson testified that she and Lang began drinking beer when they arrived at their apartment after work on a Friday night in April, 1995. After an increasingly heated argument, Lang grabbed Hendrickson and began to hit her in the face. They fought intermittently over the next half hour, until Lang left the apartment.

When Lang returned about an hour later, he was angry and violent. He began to hit Hendrickson with his fists. Hendrickson testified:

> And in defense of myself I raised up my hands. And then he said that if I wanted to fight like a man, he was going to beat me like a man. So he got worse.

Hendrickson fought back without much success. Eventually, she fled to the kitchen and picked up a knife. She said she only meant to scare Lang, but when he came at her again, she stabbed him in the arm. Lang wrestled the knife away from Hendrickson and cut her on the chin. In the course of a struggle for the knife, Hendrickson sustained another cut on the hand. Lang, she said, was trying to stab her in the throat; he said he was going to cut her "like Nicole Brown Simpson." Hendrickson was afraid Lang would kill her. She finally managed to get the knife and pull away from him. Moments later, Lang fell to the floor. Hendrickson thought he was joking:

> I told him to come on, get up, quit joking around. And he

just laid there. And I looked at him, and then I looked at him again, and noticed there was something wrong at that point.

Hendrickson lifted up Lang's shirt and saw a puncture wound in his chest. She then called 911. Lang fell into a coma and died several days later.

Hendrickson did not recall inflicting the fatal wound to the chest. "The only thing that I remember is that he was coming at me after I had taken the knife away from him, and I had staggered back, and he came rushing forward to me."

The State's theory of the case, based on Hendrickson's statement to police on the night of the event, was that Hendrickson became infuriated when Lang cut her on the chin and that she intentionally stabbed him in the chest. Hendrickson's theory was that the fatal stab wound occurred while she was defending herself from Lang's escalating attack against her. The State insisted that Hendrickson could not claim self-defense because her testimony amounted to a claim that the fatal stabbing was accidental. The State relied on the established rule that an unintentional assault or killing can be *excused* through the defense of accident but it cannot be *justified* through a claim of self-defense. *State v. Kerr*, 14 Wn. App. 584, 587, 544 P.2d 38 (1975), *review denied*, 87 Wn.2d 1001 (1976). The prosecutor told the court that Hendrickson "has got to say she stabbed him on purpose" in order to claim self-defense.

After hearing Hendrickson's description of the stabbing, the court ruled that her testimony did not support the theory of self-defense. Consistent with this ruling, the court did not permit any of the testimony which Hendrickson offered to show that her apprehension of bodily harm was reasonable under the circumstances. Hendrickson and others would have testified that Lang had frequently assaulted Hendrickson in the past. An expert on battered women's syndrome, Karil Klingbeil, would have testified that Hendrickson's was a classic case of the

condition. The court also refused to instruct on self-defense. Recognizing that Hendrickson's opening statement had brought the issue of self-defense to the attention of the jury, the court specially instructed them not to consider it.

The jury was ultimately unable to reach a verdict. The court declared a mistrial. This court granted Hendrickson's emergency motion for discretionary review and stayed retrial pending this review. Hendrickson assigns error to various trial court rulings excluding evidence relating to the issue of self-defense, as well as to the rulings on the instructions.

## II.

The charge in this case was felony murder. The State's Information alleged that Hendrickson caused Lang's death "while committing and attempting to commit the crime of Assault in the Second Degree, and in the course of and in furtherance of said crime". *See* RCW 9A.32.050(b). A defendant's use of force against another, to a degree that ordinarily would constitute a second degree assault, is justifiable when the defendant is about to be injured and when the force is not more than is necessary. RCW 9A.16.020(3).

Self-defense is not available to a defendant who consistently testifies that the fatal blow was accidental. *State v. Baker*, 58 Wn. App. 222, 792 P.2d 542, *review denied*, 115 Wn.2d 1018 (1990); *State v. Hanson*, 58 Wn. App. 504, 793 P.2d 1001, *review denied*, 115 Wn.2d 1033 (1990); *State v. Kerr*, 14 Wn. App. at 584 (1975), *review denied*, 87 Wn.2d 1001 (1976); *see also State v. Stone*, 24 Wn. App. 270, 600 P.2d 677 (1979), *review denied*, 93 Wn.2d 1013 (1980). The State maintains that Hendrickson, like the defendants in *Baker, Hanson, Kerr,* and *Stone,* claimed the act which caused the victim's death in this case was accidental. We have been unable to locate any point in the record at which Hendrickson testified that the stabbing was ac-

cidental or unintentional, despite the prosecutor's best efforts to put those words in her mouth. What Hendrickson said was that she did not know, did not realize, or did not remember, how Lang received the fatal wound.

The law does not require an explicit statement of intent. The fact that Hendrickson, testifying at trial, did not remember dealing Lang the fatal blow does not preclude the inference that she intended to strike that particular blow at the time. It is plausible that a combatant would not precisely recall every movement occurring in the course of a prolonged, violent, and fast-moving struggle.

*Hanson* is factually closest to the present case. *Hanson*, 58 Wn. App. 504. The defendant became frightened of the victim during a quarrel and went to get a gun to scare him. Contrary to her initial statement to the police, which implied that she shot at him intentionally, she testified at trial that the handgun discharged when he grabbed her arms and began shaking her. The case went to trial on charges of intentional murder and manslaughter. Hanson appealed the ensuing murder conviction on the basis that the trial court had refused to permit Karil Klingbeil's testimony about battered woman syndrome. This court affirmed. The reason *Hanson* is *not* on point in the present case is that Hanson did not claim self-defense. Klingbeil's testimony, which the *Hanson* court said would have been pertinent to a claim of self-defense, was not pertinent to the remaining issues in that case. Unlike the defendant in *Hanson*, Hendrickson from the beginning unambiguously asserted self-defense and made it the heart of her defense.

Any evidence tending to prove that the homicide was done in self-defense will properly raise the issue. *State v Adams*, 31 Wn. App. 393, 395, 641 P.2d 1207 (1982). Hendrickson's testimony was sufficient to raise the issue; the trial court erred in ruling to the contrary. On retrial, subject to the limitations of ER 403 and other rules of evidence, the court should permit Hendrickson to introduce evidence which tends to support her claim of self-defense, and should instruct the jury accordingly.

■ Whether the battered women's syndrome evidence would be helpful to the jury remains in dispute. With proper foundation, such evidence is generally admissible in self-defense cases to illustrate and explain the reasonableness of the defendant's actions. *State v. Riker*, 123 Wn.2d 351, 359, 869 P.2d 43 (1994). The testimony may serve to explain a defendant's perception of threat and the reasonableness of the force employed in self-defense against that threat. *State v. Allery*, 101 Wn.2d 591, 597, 682 P.2d 312 (1984). The State argues that in this case, the average lay person could easily understand Hendrickson's perceptions and reactions without the benefit of expert testimony.

Because there has not been a resolution of this precise issue by the trial court, it is not at this point appropriate for appellate decision. Similarly, although error is assigned to the trial court's exclusion of hearsay testimony by witnesses who had observed her relationship with Lang, Hendrickson does not identify the exact statements she sought to have admitted. We leave these matters to the discretion of the trial court upon retrial.

In her motion for discretionary review, Hendrickson argued that the behavior of the trial judge during trial violated due process and the appearance of fairness doctrine. The remedy, if these violations did occur, would be a new trial with a new judge. After the mistrial, the trial judge recused herself from the case. Any impropriety in the court's behavior is therefore moot, and we will not address this issue here. *See State v. Dubois*, 79 Wn. App. 605, 612, 904 P.2d 308 (1995).

We remand the case for further proceedings consistent with this opinion.

COLEMAN and WEBSTER, JJ., concur.