995 P.2d 474 (2000)
Patricia Yvonne BOYKINS, Appellant,
v.
The STATE of Nevada, Respondent.
No. 29716.
Supreme Court of Nevada.
February 4, 2000.
*475 Kenneth V. Ward, Public Defender, Lyon County, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Robert E. Estes, District Attorney, and John Paul Schleglemilch, Deputy District Attorney, Lyon County, for Respondent.
BEFORE THE COURT EN BANC.

OPINION
LEAVITT, J.
Appellant was charged with first degree murder with the use of a deadly weapon. She asserted self-defense and claimed that she suffered from battered woman syndrome. An expert testified concerning the effects of the syndrome on a battered woman's beliefs, behavior, and perceptions. The jury returned a guilty verdict of involuntary manslaughter with the use of a deadly weapon. Appellant was sentenced to the Nevada Department of Prisons for a minimum term of nineteen (19) months and a maximum term of forty-eight (48) months.

FACTS
Appellant Patricia Yvonne Boykins and the victim, Calvin Rochester Swazya were involved in a non-marital relationship for seven years and cohabited for six years. The couple constantly argued with resulting instances of verbal and physical abuse. Boykins testified that Swazya would beat her and "there were times when they [sic] were beatings... he always hit me, but there were times that were worse than others." She also testified that she knew, by Swazya's expressions, when the argument would become violent. Boykins' testimony was corroborated by other witnesses who testified regarding the violent nature of Boykins' relationship with Swazya.
Boykins was a general manager of the Sagebrush Ranch, a licensed brothel, where Swazya was a custodian. The relationship between the parties deteriorated, Swazya requested an early paycheck and was preparing to leave. The couple argued about financial issues for several hours. One witness testified that he observed Boykins in a corner of her office with her hands raised to protect her face while Swazya was standing over her with his hand raised as if to slap her. Swazya appeared to be in a rage.
Boykins testified that she began loading a.357 revolver. When Swazya walked toward her, the gun discharged. Swazya was hit above his left eyebrow and was fatally wounded. Boykins stated that the gun accidentally discharged while she was trying to load it.[1]
Although Boykins told the police and testified that the shooting was accidental, due to the physical evidence, an accidental discharge was considered unlikely by both the defense and prosecution experts. For this reason, accidental discharge was not the focus *476 of the defense. Instead, counsel for Boykins argued that Boykins shot Swazya in self-defense and her insistence in describing the incident as an accident was a product of battered woman syndrome. Evidence was presented that women who suffer from battered woman syndrome often claim they accidentally killed their batterer.
The jury convicted Boykins of involuntary manslaughter with the use of a deadly weapon.[2] The trial judge sentenced Boykins to the Nevada State Prison for a minimum of nineteen (19) months and a maximum term of forty-eight (48) months without any enhancement.

DISCUSSION
Boykins offered the following jury instruction:
Evidence of battered womens [sic] syndrome can be considered by you, the jury, for the following purposes[:]
(1) To determine whether the defendant actually believed that she needed to use deadly force.
(2) To determine whether, due to battered womens [sic] syndrome, her belief was reasonable, and
(3) To assist in determining the credibility of the defendant's testimony.
The district court declined to give this instruction, finding that there were other instructions, specifically Instruction 34, that adequately advised the jury on the effects of domestic violence to a claim of self-defense pursuant to NRS 48.061 and 200.200.
Boykins claims that the failure to give the instruction deprived her of a fair trial. "A defendant in a criminal case is entitled, upon request, to a jury instruction on his or her theory of the case, so long as there is some evidence, no matter how weak or incredible, to support it." Williams v. State, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983). Boykins asserts that the offered instruction was necessary to eliminate confusion created by other instructions. Boykins argues that Instruction 34 did not make it clear to the jury that evidence regarding battered woman syndrome could be considered in evaluating whether a reasonable person under the circumstances (i.e., suffering from battered woman syndrome) would believe that she was in imminent fear of her life or great bodily injury. Boykins also contends that Instruction 34 did not address the effect of the syndrome on her state of mind at the time of the shooting and her claim that the shooting was accidental despite physical evidence to the contrary. We agree.
Dr. Lenore E.A. Walker[3] testified as an expert witness for Boykins. "Dr. Walker [has defined] a battered woman as `one who is repeatedly subjected to any forceful physical or psychological behavior by a man in order to coerce her to do something he wants her to do without any concern for her rights.'" Ann-Marie Montgomery, Note, State v. Riker, Battered Women under duress: The concept the Washington Supreme Court could not grasp, 19 Seattle U.L.Rev. 385, 391 (1996) (quoting Lenore E. Walker, The Battered Woman 15 (1980)). Dr. Walker testified that the abuse must occur twice before a woman can be considered a battered woman. The district court allowed her great latitude in describing aspects of the battered woman syndrome including the interaction between the "learned helplessness" and a process called the "three phases of violence" (the cycle theory).[4] Dr. Walker's three phases of violence theory has been described as follows:
This theory describes three distinct phases to a battering relationship. In phase one, the tension building phase, the batterer indulges in psychological torture *477 of the woman. This torture is followed by phase two, an "acute battering incident," in which the inevitable tension that has built up results in an uncontrollable discharge of violence. In phase three, the batterer expresses "loving contrition" by apologizing profusely and showing kindness and remorse. It is this third phase that is the most troublesome because the batterer's behavior provides the woman with positive reinforcement for staying in the relationship.
This positive reinforcement leads battered women to experience a sense of learned helplessness. The theory of learned helplessness explains the counter-intuitive nature of the battered woman's responses to the incessant abuse she suffers ....
When a woman realizes that her behavior bears no relationship to the violence she receives, she develops "survival or coping skills that keep [her] alive with minimal injuries." For example, many battered women become passive after an abusive incident. These coping skills are developed at the expense of escaping skills, which may include anger and active behavior, skills that would enable the battered woman to leave the relationship.
The synergistic effects of the cycles of violence and learned helplessness are profound. A symptom of these effects is hypervigilance, a symptom that all battered women share. Battered women are hypervigilant to cues of potential danger and are acutely aware of their surroundings. To a battered woman, otherwise insignificant behaviors such as an eye twitch, a particular tone of voice, or a certain movement are all things that may signal an impending attack by a male.
Montgomery, supra, at 392-94 (footnotes omitted) (quoting Lenore E.A. Walker, Battered Women Syndrome and Self-Defense, 6 Notre Dame J.L. Ethics and Pub. Pol'y 321, 326 (1992) & Lenore E. Walker, The Battered Woman Syndrome (1984)).
Several state courts have accepted evidence of battered woman syndrome:
[[S]eventy-six] percent of the states [thirty-nine] have found expert testimony on battering and its effects admissible to prove the defendant is a battered woman or "suffers from battered woman syndrome." Nearly as many, [thirty-five] states [sixty-nine percent] have found "generic" expert testimony admissible, i.e., to explain battering and its effects generally.
Janet Parrish, Trend analysis: Expert testimony on battering and its effects in criminal cases, 11 Wis. Women's L.J. 75, 117-18 (1996) (footnote omitted).
The Nevada Legislature recognized the theory in NRS 48.061 as follows:
Evidence of domestic violence as defined in NRS 33.018 and expert testimony concerning the effect of domestic violence on the beliefs, behavior and perception of the person alleging the domestic violence is admissible in chief and in rebuttal, when determining:
1. Whether a person is excepted from criminal liability pursuant to subsection 7 of NRS 194.010,[5] to show the state of mind of the defendant.
2. Whether a person in accordance with NRS 200.200[6] has killed another in self-defense, toward the establishment of the legal defense.
Under Nevada law, the effect of domestic violence on "beliefs, behavior, and *478 perception" of a defendant is admissible to "show the defendant's state of mind." However, battered woman syndrome is not a complete defense. The United States District Court for the District of Kansas explains:
[B]attered woman syndrome is not a defense. It is some evidence to be considered to support a defense, such as self-defense, duress, compulsion, and coercion. Because women who suffer from the battered woman syndrome do not act in a typical manner as compared with women who do not suffer from it, evidence of the syndrome is used to explain their behavior. Evidence of [battered woman] syndrome is presented through expert testimony to assist the jury's evaluation of the defendant's state of mind.
U.S. v. Brown, 891 F.Supp. 1501, 1505 (D.Kan.1995) (citation omitted).
NRS 48.061 is modeled after Oklahoma's Battered Woman Statute. See Hearing on A.B. 637 Before the Assembly Comm. on Judiciary, 67th Leg. (Nev., May 27, 1993), Exhibit E; Senate Daily Journal, A.B. 637, at 27 (67th Leg. Nev., June 26, 1993). Oklahoma's Statute located at § 40.7 of Title 22 contains the following: "In an action in a court of this state, if a party offers evidence of domestic abuse, testimony of an expert witness concerning the effects of such domestic abuse on the beliefs, behavior and perception of the person being abused shall be admissible as evidence." After Oklahoma passed the Battered Woman Syndrome Statute, an Oklahoma court examined a newly revised jury instruction and stated that the jury instruction was consistent with the new statute. See Bechtel v. State, 840 P.2d 1, 11 (Okla.Crim.App.1992). The revised jury instruction contained the following:
A person is justified in using deadly force in self-defense if that person believed that use of deadly force was necessary to protect herself from imminent danger of death or great bodily harm. Self-defense is a defense although the danger to life or personal security may not have been real, if a person, in the circumstances and from the viewpoint of the defendant, would reasonably have believed that she was in imminent danger of death or great bodily harm.
Id.
The theory behind the use of evidence regarding domestic violence and the battered woman syndrome centers upon the state of mind of the individual who has been subjected to such violence. Self-defense is shown when a person, under the circumstances, reasonably believes she is in imminent danger of death or great bodily harm, even if no actual threat exists. Where the "circumstances" include domestic violence, the battered woman syndrome is relevant to the reasonableness of an individual's belief that death or great bodily harm is imminent.
The district court gave a number of instructions to the jury that dealt with the concept of self-defense.[7] Of the twelve instructions involving issues of self-defense, only one, Instruction 34, discusses the relationship between domestic violence or the battered woman syndrome and Boykins' claim of self-defense.
Instruction 34 did not properly encompass Boykins' theory of the case. The instruction limits the consideration of the battered woman syndrome evidence to Boykins' perceptions that Swazya's conduct put her in imminent fear of her life or great bodily harm. It did not reflect that the syndrome could be used to evaluate Boykins' state of mind at the time of the shooting and her claim that the shooting was an "accident."
The failure to give an instruction regarding Boykins' state of mind was compounded by the wording of the eleven other instructions encompassing the law on self-defense. Many of the instructions did not contain any language that the reasonableness of a person's belief must be considered under the circumstances that existed when the belief was formed. For example, Instruction 23 indicated that deadly force was only authorized when a person believes "with good reason" that such force is necessary to prevent great bodily harm. "Good reason" is not the equivalent of "good reason under the circumstances." *479 The lack of consistency amongst the various self-defense instructions together with the failure to give an instruction regarding the relationship between a person's state of mind and the battered woman syndrome constitutes error. Although we are mindful of the fact, as pointed out by the dissent, that Boykins was not convicted of first degree murder, we cannot conclude that the failure to properly instruct the jury is harmless error.

CONCLUSION
The district court allowed evidence of the battered woman syndrome and correctly refused to allow the expert witness to testify on the ultimate issue that appellant was suffering from the syndrome. See Townsend v. State, 103 Nev. 113, 734 P.2d 705 (1987). However, the trial court failed to properly instruct the jury on Boykins' theory that battered woman syndrome should be considered by the jury not only as to the reasonableness of Boykins' conduct, but as to her state of mind at the time of the shooting. Therefore, the case must be reversed and remanded for a new trial. At the new trial, the court should give the following instruction:
You have heard expert testimony concerning the effect of domestic violence on the beliefs, behavior, and perception of a woman who may be suffering from battered woman syndrome. The defendant asserts that she was suffering from battered woman syndrome at the time of the killing. This, in itself, is not a legal defense. However, if you believe that the defendant was suffering from battered woman syndrome, you may consider such evidence when determining the defendant's state of mind at the time of the killing and whether she acted in self-defense. You may also consider such evidence as to the defendant's credibility and the reasonableness of her belief that she was about to suffer imminent death or great bodily harm and the need to slay an aggressor.
By reason of the foregoing, the case is reversed and remanded for a new trial in accordance with the views expressed herein.
ROSE, C.J., MAUPIN, SHEARING, AGOSTI, and BECKER, JJ., concur.
YOUNG, J., dissenting.
I respectfully dissent. I conclude that battered woman syndrome is inapplicable to the instant matter. Even assuming that battered woman syndrome is relevant to this case, I further conclude that the district court properly refused Boykins' proffered jury instruction.
The majority states that Boykins asserted self-defense. After a careful review of the entire record on appeal, I conclude that the record belies the majority's statement. In fact, Boykins consistently maintained that the shooting was accidental while her attorney pursued a theory of self-defense based on battered woman syndrome.
Between the time of the shooting and the beginning of the trial, Boykins gave several versions of events surrounding the shooting with each version containing changed details. Most importantly, Boykins gave two different versions of the actual shooting. Within hours of the shooting, Boykins told two separate police officers that the gun went off when she closed the cylinder while loading it. Boykins testified at trial nearly a year later that the incident occurred differently. Boykins testified that as Swazya approached her, she pointed the gun at him while holding it with both hands. Boykins pulled the hammer back on the gun in order "to scare him." Boykins then decided to turn and leave, but she stumbled into a desk and chair while still pointing the gun at Swazya. At that time, Boykins testified that the gun accidentally discharged. There were no other witnesses to the shooting. Though Boykins changed her description of the shooting, she has nonetheless remained consistent about the accidental nature of the shooting. Boykins has never indicated that she intentionally shot and killed Swazya.
In State v. Hanson, 58 Wash.App. 504, 793 P.2d 1001 (1990), the defendant was convicted of second degree murder. She asserted that the trial court erred in excluding testimony regarding battered woman syndrome. The Washington Court of Appeals held that the defendant's offer of proof regarding battered *480 woman syndrome testimony was insufficient. Even if it reached the issue of the relevancy of battered woman syndrome testimony, the court determined that expert testimony concerning battered woman syndrome was not relevant in this case because the defendant asserted that she accidentally shot and killed the victim. Thus, the court stated that the battered woman syndrome testimony would only be relevant where the defendant intentionally shot the victim and then claimed self-defense. Id. at 1002-04; see also State v. Sallie, 81 Ohio St.3d 673, 693 N.E.2d 267, 270 (1998) (holding that defendant's attorney was not ineffective because testimony concerning battered woman syndrome was irrelevant where defendant claimed that the shooting was accidental).
In the instant matter, Boykins similarly maintained that she shot Swazya accidentally. Thus, battered woman syndrome testimony is simply irrelevant because the testimony only relates to a claim of self-defense, and self-defense only arises to legally justify a killing. If the killing is an accident, legal justification is not required. Moreover, at trial and on appeal, Boykins relied solely on People v. Humphrey, 13 Cal.4th 1073, 56 Cal.Rptr.2d 142, 921 P.2d 1 (1996), in which the California Supreme Court held that battered woman syndrome testimony is admissible. The district court specifically rejected Boykins' reliance on Humphrey based on Nevada law. Further, Humphrey is easily distinguishable from the instant matter. In Humphrey, the defendant consistently maintained that she intentionally shot and killed the victim, whereas Boykins steadfastly claimed that she shot Swazya accidentally. In addition, the Humphrey court based its decision on section 1107 of the California Evidence Code, which is substantially different from Nevada's statutory framework. Therefore, I conclude that Humphrey provides no support for Boykins' argument.
At trial, Boykins and her attorney asserted two opposing theories of the shooting. As the Hanson court stated, "[I]t would be a strange anomaly if the same evidence could support two diametrically opposed theories of how the death ensued, by intentional self-defense or by accident." Hanson, 793 P.2d at 1003. Boykins and her attorney cannot have it both ways in pursuing patently inconsistent theories of the shooting. Accordingly, I conclude that battered woman syndrome testimony is inapplicable to this case because there is no need to explain or justify why Boykins intentionally shot Swazya since Boykins consistently maintained for nearly a year that the shooting was an accident.
Even if testimony concerning battered woman syndrome is relevant, Nevada's statutory framework explicitly indicates how this testimony can be used at trial. NRS 48.061 provides, in part:
Evidence of domestic violence as defined in NRS 33.018 and expert testimony concerning the effect of domestic violence on the beliefs, behavior and perception of the person alleging the domestic violence is admissible in chief and in rebuttal, when determining:
....
2. Whether a person in accordance with NRS 200.200 has killed another in self-defense, toward the establishment of the legal defense.
(Emphasis added.)
NRS 200.200 states, in part:
If a person kills another in self-defense, it must appear that:
1. The danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary; and
2. The person killed was the assailant, or that the slayer had really, and in good faith, endeavored to decline any further struggle before the mortal blow was given.
(Emphasis added.)
Thus, when the statutes are read together, evidence of domestic violence is clearly admissible when a theory of self-defense is presented. Consequently, evidence of domestic violence and expert testimony concerning the effects of domestic violence on a defendant's beliefs, behavior, and perceptions are admissible only in relation to the defendant's perception of imminent danger and *481 the defendant's perceived need to use deadly force.
Instruction 34 provided:
During this trial, there has been evidence presented relating to the effect that Battered Woman Syndrome may have had on the defendant. You, as Jurors, may only use that evidence insofar as it relates to the defendant's perceptions that:
1. the danger was so urgent and pressing that, in order to save her own life, or to prevent her from receiving great bodily harm, the killing of Calvin[] Rochester Swazya was absolutely necessary, and
2. to determine whether the defendant actually believed that she needed to use deadly force.
Thus, I conclude that the district court properly instructed the jury on evidence relating to the effects of domestic violence and its application to Boykins' theory of self-defense. Instruction 34 accurately stated Nevada law by integrating NRS 48.061 and NRS 200.200. Indeed, the instruction echoes the language of NRS 200.200(1). Moreover, pursuant to NRS 48.061, the instruction expressly limits the use of this type of evidence to Boykins' perceptions. Accordingly, I conclude that the district court did not err in giving Instruction 34 because it properly limited the use of evidence of domestic violence.
In contrast, Boykins' proffered instruction fails to incorporate the language of NRS 200.200. For example, the proffered instruction fails to include an imminency element as required under NRS 200.200(1). Furthermore, NRS 48.061 and NRS 200.200 do not discuss the applicability of domestic violence evidence to a witness's credibility. Nonetheless, Boykins' proffered instruction sought to admit this evidence in an apparent attempt to reconcile the inconsistent versions of the accidental shooting that she relayed to others. Indeed, by finding Boykins guilty of involuntary manslaughter, the jury apparently believed her testimony that she shot Swazya accidentally.
If either Boykins' proffered instruction or the majority's proposed instruction is used, it would rest on the premise that the jury should completely disregard testimony given under oath by Boykins that she did not intend to shoot Swazya. Instead, the premise of either such instruction would be that Boykins really did not understand what happened; but that with the insight provided by psychiatric testimony, she intended to kill him all along. This would require the jury to engage in mental gymnastics that only the science of psychiatry could understand.
Moreover, it is important to point out that the verdict was the result of a remarkably comprehensive deliberative process. The trial lasted ten days, and the jury received upwards of fifty jury instructions. The jury also deliberated for more than fifteen hours. After hearing all the evidence and even after the lengthy testimony provided by Boykins' expert, Dr. Lenore E.A. Walker, the jury accepted Boykins' testimony that she shot Swazya accidentally and clearly rejected the alternative defense theory based on battered woman syndrome. The jury apparently favored the testimony of the State's expert, Dr. Alice S. Brill, that Boykins did not fit the typical profile of a battered woman. For example, Boykins successfully managed a brothel with dozens of employees, she was financially independent, and earned approximately $65,000 annually for her work at the brothel. Moreover, Boykins had previously exhibited aggressive and dominant personality characteristics. In addition, Swazya's ex-wife testified that he had never physically abused her during their eighteen-year marriage. For these reasons, I believe that the jury's decision after fifteen hours of deliberation should not be lightly reversed.[1]
Additionally, the district court expressly found that the self-defense instructions and Instruction 34 sufficiently covered the subject of Boykins' proffered instruction.[2] It is *482 well-settled that "if a proffered instruction misstates the law or is adequately covered by other instructions, it need not be given." Barron v. State, 105 Nev. 767, 773, 783 P.2d 444, 448 (1989). Nonetheless, the majority concludes that the district court committed reversible error because Instruction 34 did not permit evidence of battered woman syndrome to be used to evaluate Boykins' state of mind or the reasonableness of her actions.
However, NRS 48.061 and NRS 200.200 do not permit evidence concerning battered woman syndrome to be used in order to evaluate Boykins' state of mind or the reasonableness of her actions. A consideration of Boykins' state of mind and the reasonableness of her actions is the proper subject of self-defense instructions. In this case, the district court gave no less than twelve self-defense jury instructions regarding issues related to Boykins' state of mind and the reasonableness of her actions. Importantly, Boykins did not object to any of the self-defense instructions, which would typically preclude appellate review. See Etcheverry v. State, 107 Nev. 782, 784-85, 821 P.2d 350, 351 (1991) (holding that failure to object to jury instruction at trial bars appellate review). Even assuming that the self-defense instructions contain minor inconsistencies, I conclude that Instruction 34 and the twelve self-defense jury instructions adequately cover Nevada law. Accordingly, I view the majority's attempt to integrate the jury instructions regarding self-defense and battered woman syndrome as confusing and unnecessary.
Simply put, I believe that battered woman syndrome is inapplicable based on the facts of this case. Even if testimony concerning battered woman syndrome is considered relevant, I believe that Boykins' proffered instruction and the majority's proposed instruction overstate the admissibility of evidence concerning domestic violence. Both NRS 48.061 and NRS 200.200 clearly provide for when and how evidence of domestic violence may be used. Instruction 34 properly abides by these statutes, whereas Boykins' proffered instruction and the majority's proposed instruction do not. Domestic violence is no doubt a serious problem. However, by going beyond the plain language of NRS 48.061 and NRS 200.200, I fear that the majority embarks upon a dangerous path of incrementally broadening the application of self-defense claims without the legislature's explicit approval. Our duty is to interpret laws enacted by the legislature, not make our own when we deem it desirable. Accordingly, I dissent.[3]
NOTES
[1] Evidence was presented that due to the model of the revolver, in order to load the gun and close the cylinder, the gun would have to be pointing down toward the floor.
[2] The State filed a motion to correct sentence as to the deadly weapon enhancement. We have held that the deadly weapon enhancement does not apply to the unintentional crime of involuntary manslaughter. Buschauer v. State, 106 Nev. 890, 895-96, 804 P.2d 1046, 1049 (1990).
[3] Dr. Walker is a psychologist who has done extensive research on battered woman syndrome. She has published several articles and books on the subject, and she has testified as an expert on battered woman syndrome in thirty-five states, five federal courts, and a court in Greece.
[4] Dr. Walker indicated learned helplessness occurs when a battered woman is unable to control her batterer's abuse.
[5] NRS 194.010 provides in pertinent part as follows:

All persons are liable to punishment except those belonging to the following classes:
....
7. Persons, unless the crime is punishable with death, who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to believe, and did believe, their lives would be endangered if they refused, or that they would suffer great bodily harm.
[6] NRS 200.200 states as follows:

If a person kills another in self-defense, it must appear that:
1. The danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary; and
2. The person killed was the assailant, or that the slayer had really, and in good faith, endeavored to decline any further struggle before the mortal blow was given.
[7] Instructions 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34 and 36 all involved self-defense and the concept of what constitutes a reasonable belief that death or great bodily injury is imminent.
[1] It is important to note that the Department of Parole and Probation paroled Boykins on June 11, 1998. Boykins was then discharged from parole on January 29, 1999.
[2] As previously noted, Boykins only offered People v. Humphrey, 13 Cal.4th 1073, 56 Cal.Rptr.2d 142, 921 P.2d 1 (1996), in support of her proposed instruction. Humphrey involved an admittedly intentional killing. See id., 56 Cal.Rptr.2d 142, 921 P.2d at 3-4. It was Boykins' responsibility to provide authority in support of her position. This was not done, and she cannot now be heard to complain.
[3] In this dissent, I reluctantly use the term "battered woman syndrome." The term connotes more than the legislature apparently deemed admissible. The term does not appear in NRS 48.061 or NRS 200 .200. The original version of NRS 48.061 included the term "domestic abuse syndrome." See A.B. 637, 67th Leg. (Nev., May 17, 1993). However, the legislature subsequently adopted NRS 48.061 in its current form and excluded references to "domestic abuse syndrome." See 1993 Nev. Stat., ch. 346, §§ 1-2, at 1107. Thus, I prefer the explicit language of NRS 48.061 and NRS 200.200 instead of the term "battered woman syndrome" or "domestic abuse syndrome."