Young, J.,
dissenting:
I respectfully dissent. I conclude that battered woman syndrome is inapplicable to the instant matter. Even assuming that battered woman syndrome is relevant to this case, I further conclude that the district court properly refused Boykins’ proffered jury instruction.
The majority states that Boykins asserted self-defense. After a careful review of the entire record on appeal, I conclude that the record belies the majority’s statement. In fact, Boykins consistently maintained that the shooting was accidental while her attorney pursued a theory of self-defense based on battered woman syndrome.
Between the time of the shooting and the beginning of the trial, Boykins gave several versions of events surrounding the shooting with each version containing changed details. Most importantly, Boykins gave two different versions of the actual shooting. Within hours of the shooting, Boykins told two separate police officers that the gun went off when she closed the cylinder while loading it. Boykins testified at trial nearly a year later that the incident occurred differently. Boykins testified that as Swazya approached her, she pointed the gun at him while holding it with both hands. Boykins pulled the hammer back on the gun in order “to scare him.” Boykins then decided to turn and leave, but she stumbled into a desk and chair while still pointing the gun at Swazya. At that time, Boykins testified that the gun accidentally discharged. There were no other witnesses to the shooting. Though Boykins changed her description of the shooting, she has nonetheless remained consistent about the accidental nature of the shooting. Boykins has never indicated that she intentionally shot and killed Swazya.
In State v. Hanson, 793 P.2d 1001 (Wash. Ct. App. 1990), the defendant was convicted of second degree murder. She asserted that the trial court erred in excluding testimony regarding battered woman syndrome. The Washington Court of Appeals held that the defendant’s offer of proof regarding battered woman syndrome testimony was insufficient. Even if it reached the issue of the relevancy of battered woman syndrome testimony, the court determined that expert testimony concerning battered woman syndrome was not relevant in this case because the defendant asserted that she accidentally shot and killed the victim. Thus, the court stated that the battered woman syndrome testimony would only be relevant where the defendant intentionally shot the victim and then claimed self-defense. Id. at 1002-04; see also State v. Sallie, 693 N.E.2d 267, 270 (Ohio 1998) (holding that defendant’s attorney *180 was not ineffective because testimony concerning battered woman syndrome was irrelevant where defendant claimed that the shooting was accidental).
In the instant matter, Boykins similarly maintained that she shot Swazya accidentally. Thus, battered woman syndrome testimony is simply irrelevant because the testimony only relates to a claim of self-defense, and self-defense only arises to legally justify a killing. If the killing is an accident, legal justification is not required. Moreover, at trial and on appeal, Boykins relied solely on People v. Humphrey, 921 P.2d 1 (Cal. 1996), in which the California Supreme Court held that battered woman syndrome testimony is admissible. The district court specifically rejected Boykins’ reliance on Humphrey based on Nevada law. Further, Humphrey is easily distinguishable from the instant matter. In Humphrey, the defendant consistently maintained that she intentionally shot and killed the victim, whereas Boykins steadfastly claimed that she shot Swazya accidentally. In addition, the Humphrey court based its decision on section 1107 of the California Evidence Code, which is substantially different from Nevada’s statutory framework. Therefore, I conclude that Humphrey provides no support for Boykins’ argument.
At trial, Boykins and her attorney asserted two opposing theories of the shooting. As the Hanson court stated, “[I]t would be a strange anomaly if the same evidence could support two diametrically opposed theories of how the death ensued, by intentional self-defense or by accident.” Hanson, 793 P.2d at 1003. Boykins and her attorney cannot have it both ways in pursuing patently inconsistent theories of the shooting. Accordingly, I conclude that battered woman syndrome testimony is inapplicable to this case because there is no need to explain or justify why Boykins intentionally shot Swazya since Boykins consistently maintained for nearly a year that the shooting was an accident.
Even if testimony concerning battered woman syndrome is relevant, Nevada’s statutory framework explicitly indicates how this testimony can be used at trial. NRS 48.061 provides, in part:
Evidence of domestic violence as defined in NRS 33.018 and expert testimony concerning the effect of domestic violence on the beliefs, behavior and perception of the person alleging the domestic violence is admissible in chief and in rebuttal, when determining:
2. Whether a person in accordance with NRS 200.200 has killed another in self-defense, toward the establishment of the legal defense.
(Emphasis added.)
*181 NRS 200.200 states, in part:
If a person kills another in self-defense, it must appear that:
1. The danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary; and
2. The person killed was the assailant, or that the slayer had really, and in good faith, endeavored to decline any farther struggle before the mortal blow was given.
(Emphasis added.)
Thus, when the statutes are read together, evidence of domestic violence is clearly admissible when a theory of self-defense is presented. Consequently, evidence of domestic violence and expert testimony concerning the effects of domestic violence on a defendant’s beliefs, behavior, and perceptions are admissible only in relation to the defendant’s perception of imminent danger and the defendant’s perceived need to use deadly force.
Instruction 34 provided:
During this trial, there has been evidence presented relating to the effect that Battered Woman Syndrome may have had on the defendant. You, as Jurors, may only use that evidence insofar as it relates to the defendant’s perceptions that:
1. the danger was so urgent and pressing that, in order to save her own life, or to prevent her from receiving great bodily harm, the killing of Calvin[] Rochester Swazya was absolutely necessary, and
2. to determine whether the defendant actually believed that she needed to use deadly force.
Thus, I conclude that the district court properly instructed the jury on evidence relating to the effects of domestic violence and its application to Boykins’ theory of self-defense. Instruction 34 accurately stated Nevada law by integrating NRS 48.061 and NRS 200.200. Indeed, the instruction echoes the language of NRS 200.200(1). Moreover, pursuant to NRS 48.061, the instruction expressly limits the use of this type of evidence to Boykins’ perceptions. Accordingly, I conclude that the district court did not err in giving Instruction 34 because it properly limited the use of evidence of domestic violence.
In contrast, Boykins’ proffered instruction fails to incorporate the language of NRS 200.200. For example, the proffered instruction fails to include an imminency element as required under NRS 200.200(1). Furthermore, NRS 48.061 and NRS 200.200 do not discuss the applicability of domestic violence evidence to a witness’s credibility. Nonetheless, Boykins’ proffered instruction sought to admit this evidence in an apparent attempt to reconcile the inconsistent versions of the accidental shooting that she *182 relayed to others. Indeed, by finding Boykins guilty of involuntary manslaughter, the jury apparently believed her testimony that she shot Swazya accidentally.
If either Boykins’ proffered instruction or the majority’s proposed instruction is used, it would rest on the premise that the jury should completely disregard testimony given under oath by Boykins that she did not intend to shoot Swazya. Instead, the premise of either such instruction would be that Boykins really did not understand what happened; but that with the insight provided by psychiatric testimony, she intended to kill him all along. This would require the jury to engage in mental gymnastics that only the science of psychiatry could understand.
Moreover, it is important to point out that the verdict was the result of a remarkably comprehensive deliberative process. The trial lasted ten days, and the jury received upwards of fifty jury instructions. The jury also deliberated for more than fifteen hours. After hearing all the evidence and even after the lengthy testimony provided by Boykins’ expert, Dr. Lenore E. A. Walker, the jury accepted Boykins’ testimony that she shot Swazya accidentally and clearly rejected the alternative defense theory based on battered woman syndrome. The jury apparently favored the testimony of the State’s expert, Dr. Alice S. Brill, that Boykins did not fit the typical profile of a battered woman. For example, Boykins successfully managed a brothel with dozens of employees, she was financially independent, and earned approximately $65,000 annually for her work at the brothel. Moreover, Boykins had previously exhibited aggressive and dominant personality characteristics. In addition, Swazya’s ex-wife testified that he had never physically abused her during their eighteen-year marriage. For these reasons, I believe that the jury’s decision after fifteen hours of deliberation should not be lightly reversed.[1]
Additionally, the district court expressly found that the self-defense instructions and Instruction 34 sufficiently covered the subject of Boykins’ proffered instruction.[2] It is well-settled that “if a proffered instruction misstates the law or is adequately covered by other instructions, it need not be given.” Barron v. State, 105 Nev. 767, 773, 783 P.2d 444, 448 (1989). Nonetheless, the majority concludes that the district court committed reversible error because Instruction 34 did not permit evidence of battered *183 woman syndrome to be used to evaluate Boykins’ state of mind or the reasonableness of her actions.
However, NRS 48.061 and NRS 200.200 do not permit evidence concerning battered woman syndrome to be used in order to evaluate Boykins’ state of mind or the reasonableness of her actions. A consideration of Boykins’ state of mind and the reasonableness of her actions is the proper subject of self-defense instructions. In this case, the district court gave no less than twelve self-defense jury instructions regarding issues related to Boykins’ state of mind and the reasonableness of her actions. Importantly, Boykins did not object to any of the self-defense instructions, which would typically preclude appellate review. See Etcheverry v. State, 107 Nev. 782, 784-85, 821 P.2d 350, 351 (1991) (holding that failure to object to jury instruction at trial bars appellate review). Even assuming that the self-defense instructions contain minor inconsistencies, I conclude that Instruction 34 and the twelve self-defense jury instructions adequately cover Nevada law. Accordingly, I view the majority’s attempt to integrate the jury instructions regarding self-defense and battered woman syndrome as confusing and unnecessary.
Simply put, I believe that battered woman syndrome is inapplicable based on the facts of this case. Even if testimony concerning battered woman syndrome is considered relevant, I believe that Boykins’ proffered instruction and the majority’s proposed instruction overstate the admissibility of evidence concerning domestic violence. Both NRS 48.061 and NRS 200.200 clearly provide for when and how evidence of domestic violence may be used. Instruction 34 properly abides by these statutes, whereas Boykins’ proffered instruction and the majority’s proposed instruction do not. Domestic violence is no doubt a serious problem. However, by going beyond the plain language of NRS 48.061 and NRS 200.200, I fear that the majority embarks upon a dangerous path of incrementally broadening the application of self-defense claims without the legislature’s explicit approval. Our duty is to interpret laws enacted by the legislature, not make our own when we deem it desirable. Accordingly, I dissent.[3]

It is important to note that the Department of Parole and Probation paroled Boykins on June 11, 1998. Boykins was then discharged from parole on January 29, 1999.

As previously noted, Boykins only offered People v. Humphrey, 921 P.2d 1 (Cal. 1996), in support of her proposed instruction. Humphrey involved an admittedly intentional killing. See id. at 3-4. It was Boykins’ responsibility to provide authority in support of her position. This was not done, and she cannot now be heard to complain.

In this dissent, I reluctantly use the term “battered woman syndrome.” The term connotes more than the legislature apparently deemed admissible. The term does not appear in NRS 48.061 or NRS 200.200. The original version of NRS 48.061 included the term “domestic abuse syndrome.” See A.B. 637, 67th Leg. (Nev., May 17, 1993). However, the legislature subsequently adopted NRS 48.061 in its current form and excluded references to “domestic abuse syndrome.” See 1993 Nev. Stat., ch. 346, §§ 1-2, at 1107. Thus, I prefer the explicit language of NRS 48.061 and NRS 200.200 instead of the term “battered woman syndrome” or “domestic abuse syndrome.”