**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38425-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| LESLIE MELGAR MORENO, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Leslie Moreno was charged with first degree premediated murder but was convicted at trial of the lesser offense of first degree manslaughter. Ms. Moreno asserted a claim of self-defense based on a theory of either excusable or justifiable homicide. The jury was instructed on justifiable and excusable homicide as to first degree murder and two other lesser offenses. But Ms. Moreno's attorney failed to request similar instructions as to first degree manslaughter. Ms. Moreno's trial attorney repeatedly admitted on the record that they did not make this request based on their belief that the defenses of excusable and justifiable homicide did not apply to first degree manslaughter.

On appeal, Ms. Moreno argues her trial attorney provided constitutionally ineffective representation when the attorney failed to seek self-defense instructions

No. 38425-0-III
*State v. Moreno*

applicable to first degree manslaughter. We agree. Trial counsel failed to recognize the defenses of excusable and justifiable homicide can apply to all forms of illegal homicide. As a result, the court's jury instructions improperly suggested Ms. Moreno's defenses did not apply to the offense of first degree manslaughter, of which she was ultimately convicted. Because counsel's error sufficiently undermines our confidence in the outcome, we must reverse Ms. Moreno's conviction.

## FACTS

On December 28, 2018, Leslie Moreno called 911 and reported she was driving her boyfriend, Marcus Allessio, to the hospital because he had been stabbed. Ms. Moreno stated she could not remember what happened but she and Mr. Allessio had been fighting and struggling for control of a knife. Ms. Moreno said that Mr. Allessio was neither conscious nor alert and that her four-year-old daughter was in the back seat of the vehicle. Dispatch convinced Ms. Moreno to pull over and wait for help.

Law enforcement and paramedics met Ms. Moreno at a weigh station just outside Walla Walla and discovered Mr. Allessio inside Ms. Moreno's Toyota Highlander. Mr. Allessio had succumbed to a single stab wound to the heart. A kitchen knife was found on the floor of the vehicle. Ms. Moreno accompanied law enforcement to the sheriff's office where she agreed to an interview.

2

No. 38425-0-III
*State v. Moreno*

In her interview, Ms. Moreno explained that Mr. Allessio had physically attacked her while the pair was inside her home and that he had threatened her with a knife. Ms. Moreno claimed Mr. Allessio had walked outside with the knife to Ms. Moreno's Highlander. Ms. Moreno stated she followed him, a struggle for the knife ensued and, the next thing she knew, Mr. Allessio was covered in blood. Ms. Moreno further stated Mr. Allessio had a history of suicidal ideation and she wanted to prevent him from hurting himself.

Multiple law enforcement officers noticed Ms. Moreno had fresh facial injuries, including bruising and redness, a swollen lip encrusted with blood, and a developing black eye. Law enforcement deemed Ms. Moreno cooperative and released her.

Meanwhile, officers went to Ms. Moreno's home for further investigation. The interior of the home showed signs of a physical altercation. Contact with a neighbor who lived across the street from Ms. Moreno resulted in acquisition of a security surveillance video. The video captured the altercation between Ms. Moreno and Mr. Allessio in the driveway at the time of the stabbing.

As summarized by one of the detectives at trial, the video revealed that:

> [Mr. Allessio] can be seen coming out of the garage . . . . [H]e walks out to the [vehicle] and then [Ms. Moreno] is walking out shortly thereafter within a few seconds. He gets in the Highlander . . . . [A]nd *she comes out with a knife in her hand* or what appears to be the knife and she's carrying it in her

3

No. 38425-0-III
*State v. Moreno*

right hand and you can see her as he's standing at the door, they're yelling back and forth. They're talking about problems with money and she doesn't want him to go waste gas and that it's her gas and her money and he's saying he doesn't care. And you know, he's yelling, you know, ["]have you done anything for me,["] ["]have you filled out any applications for me["] . . . . And she says ["]my fucking gas["] and ["]my fucking money.["] And while they're having this exchange, *she lifts the knife above her head with the blade pointed forward* and [Mr. Allessio] kind of steps [or leans] back a little bit briefly and there was a little bit more arguing and then he sits in the [vehicle] and they argue back and forth a little bit . . . .

2 Rep. of Proc. (RP) (Feb. 8, 2021) at 637-38 (emphasis added) (some alteration in original).

At the point described above where Mr. Allessio stepped or leaned back, Ms. Moreno lowered the knife. Mr. Allessio got into the driver's seat of the Highlander, and with the door open Ms. Moreno leaned her head, arms, and upper torso into the vehicle multiple times, entering the driver's side where Mr. Allessio sat. The first time Ms. Moreno leaned back out of the vehicle, the knife was no longer in her right hand but her left hand was not visible. Ms. Moreno was the last one seen on the video holding the knife, though the footage does not show exactly what happened each time she leaned into the vehicle.

At some point, the Highlander's horn honked and the reverse lights came on and the vehicle backed up slightly, indicating Mr. Allessio had started it. Then, three long muffled moans could be heard from Mr. Allessio while Ms. Moreno was leaning inside

No. 38425-0-III
*State v. Moreno*

the vehicle. Within seconds, Ms. Moreno got out of the vehicle, stood upright and crossed her arms, paced for a moment, and then returned her upper body briefly into the vehicle's interior. At that point, there was nothing in her hands. Ms. Moreno can then be seen running inside the house and, about 16 seconds later, she emerged with her daughter, who she secured in the back seat of the vehicle. Ms. Moreno then drove away seated on Mr. Allessio's lap.

The video contradicted Ms. Moreno's statement that Mr. Allessio was the one who walked out of the house with the knife. Based on information gleaned from the video, Ms. Moreno was arrested. She was eventually charged with first degree murder and her case proceeded to a jury trial in February 2021.

At trial, Ms. Moreno took the stand and testified in her own defense. Ms. Moreno described her relationship with Mr. Allessio and explained he suffered from drug addiction and suicidal ideation. Ms. Moreno also claimed their relationship repeatedly cycled through periods of physical and verbal abuse, manipulation, and reconciliation.

Ms. Moreno testified that on December 28, 2018, she got home around midday from a doctor's appointment. She could hear Mr. Allessio in the bedroom, and because she was exhausted, she put her daughter down for a nap, and fell asleep on the couch

5

No. 38425-0-III
*State v. Moreno*

herself. Ms. Moreno testified she woke up to Mr. Allessio screaming at her that he needed

money for drugs. He was also throwing things at her. Mr. Allessio tore down a rod in the

coat closet and Ms. Moreno began arguing with him.

Ms. Moreno alleged Mr. Allessio shoved her onto the couch and then went into

the kitchen. At this point, Ms. Moreno noticed Mr. Allessio had a knife. She claimed

he then grabbed her by the neck, pinned her against the wall, and threatened to hurt

her. Ms. Moreno testified that everything happened "so fast" but "so slow," that her

"recollection doesn't add up," and that she could not "100 [percent]" distinguish between

her own memory and what she had read in reports. 3 RP (Feb. 11, 2021) at 1149, 1151.

She explained, "I remember holding [the knife], but I just don't remember . . . walking

out of the house with it." *Id.* at 1151.

Ms. Moreno testified that Mr. Allessio screamed at her that he was going to take

the vehicle and she begged him not to because she did not have gas money. She described

what happened next as "chaotic" and "it all happened really quickly." *Id.* at 1152, 1156.

She said, "everything was just kind of happening," and "I remember I was holding the

knife, [then] he was holding the knife." *Id.* at 1152, 1155. She stated that at some point,

she let go of the knife, and then they were "fighting over it . . . back and forth" while

6

No. 38425-0-III
*State v. Moreno*

Mr. Allessio sat in the vehicle. *Id.* at 1153-54. Ms. Moreno testified repeatedly that she never intended to harm Mr. Allessio with the knife. She explained, "I was afraid that he was gonna hurt me if I was gonna let go of it. I was scared that he would hurt himself if he took it with him. I was just in fear." *Id*. at 1154. "At some point," she stated, she "saw just blood everywhere." *Id*. at 1157. Then she related her experience of running inside to get her daughter, climbing into the vehicle, and driving off. Ms. Moreno reiterated her memory of the incident was fuzzy and explained that, when she agreed to go to the sheriff's office, she remained "in shock." *Id*. at 1158-60.

The trial court instructed the jury on first degree murder, along with the lesser included offenses of second degree murder, first degree manslaughter, and second degree manslaughter. The court instructed the jury, "It is a defense *to a charge of murder* that the homicide was excusable," and "It is a defense *to a charge of murder* that the homicide was justifiable." Clerk's Papers (CP) at 164-65; 4 RP (Feb. 18, 2021) at 1663-64 (emphasis added). The instruction on second degree manslaughter also included language that the jury may acquit if "the killing [was] excusable or justifiable." CP at 171; 4 RP (Feb. 18, 2021) at 1666. But the instructions on first degree manslaughter did not include any such language. The court's instructions explained the offense of first degree manslaughter required the State to prove Ms. Moreno engaged in reckless conduct and

7

No. 38425-0-III
*State v. Moreno*

that "Marcus Allessio died as a result of [Leslie Moreno's] reckless acts." CP at 169.[1]

In closing argument, the prosecutor reviewed the elements of first and second degree murder and then addressed the offense of first degree manslaughter. The prosecutor explained, "the standard for manslaughter . . . in the first degree is recklessness." 4 RP (Feb. 18, 2021) at 1714. The prosecutor noted Mr. Allessio was irate at the time of the incident. According to the prosecutor, it was "reckless" for Ms. Moreno "to follow after him" and "to chase him." *Id.* "It's reckless to chase him with a knife and it's reckless to go in and try to stab him with a knife." *Id.*

In the defense's closing argument, counsel argued Ms. Moreno acted in fear of Mr. Allessio in the moments before he was stabbed. They argued the evidence showed Ms. Moreno did not intend to kill Mr. Allessio. Defense counsel addressed the lesser included offense of second degree manslaughter and argued Ms. Moreno's conduct was not negligent, as contemplated by the court's instructions. *See id.* at 1734. Defense counsel never addressed the offense of first degree manslaughter or whether Ms. Moreno's conduct was reckless.

---

[1] The instructions defined "recklessness" as follows: "A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a death may occur and this disregard is in gross deviation from conduct that a reasonable person would exercise in the same situation." CP at 170.

8

No. 38425-0-III
*State v. Moreno*

After the defense argument, the prosecutor asked to address the court outside

the jury's presence. Once the jury was gone, the prosecutor objected to the "excusable

or justifiable" language, CP at 171, in the court's instruction on second degree

manslaughter. 4 RP (Feb. 18, 2021) at 1744-45. The prosecutor argued it was improperly

inconsistent to so instruct the jury on second degree manslaughter but not on first degree

manslaughter. The prosecutor summarized their opinion that, "Those two different crimes

aren't treated differently under the law." *Id.* at 1747.

Defense counsel immediately retorted, "They actually are." *Id.* Defense counsel

then asserted their belief that the defenses of excusable and justifiable homicide were

available to second degree manslaughter but *not* to first degree. The court observed

that regardless of the prosecutor's objection, the jury had already been instructed.

Ms. Moreno's counsel reiterated their belief that self-defense was not legally available

as to first degree manslaughter: "You'll notice that I did not argue under manslaughter

first the same issues *because it's not available under manslaughter first*." *Id.* at 1748

(emphasis added). After the jurors returned, the prosecutor urged them in rebuttal

to reject Ms. Moreno's claim of "self-defense." *Id.* at 1751.

The jury acquitted Ms. Moreno of first degree murder and the lesser included

offense of second degree murder, but returned a guilty verdict as to first degree

9

No. 38425-0-III
*State v. Moreno*

manslaughter. During Ms. Moreno's sentencing hearing, defense counsel twice reiterated their belief that self-defense was not available as to the crime of first degree manslaughter, but was available as to murder and second degree manslaughter. Defense counsel explained:

> [The jury] found that this was not an intentional act on [Ms. Moreno's] part. They found that she was reckless by taking the knife out. . . . Your Honor, *we did not have available to us the same self-defense argument as we would have if the jury found it an intentional act.*
> . . . .
> For a reckless act, Your Honor, *there is not the defense of self-defense, we saw that with the Jury Instructions*. That is something that goes along with an intentional act as set out in the Jury Instructions or if the jury would have found that it was a negligent act.

*Id.* at 1777, 1828 (emphasis added).

Ms. Moreno received a sentence of 126 months' imprisonment. She now appeals.

## ANALYSIS

Ms. Moreno's sole argument on appeal is that she was deprived of the constitutional right to effective assistance of counsel when her attorney failed to request self-defense instructions as to the offense of first degree manslaughter.

Both the federal and state constitutions guarantee criminally accused persons the right to effective assistance of counsel. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To obtain reversal of a conviction based on ineffective assistance, an

10

No. 38425-0-III
*State v. Moreno*

individual "must overcome the presumption that [their] counsel was effective." *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 347, 325 P.3d 142 (2014). This entails clearing a number of hurdles.

The initial burden in establishing ineffective assistance is to show trial counsel's performance was objectively deficient. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). When the alleged deficiency is the failure to request a jury instruction, this requires showing: (1) the defense was entitled to the instruction, and (2) counsel's failure to request the instruction was not based on trial strategy or tactics. *State v. Calvin*, 176 Wn. App. 1, 14, 316 P.3d 496 (2013).

If the deficient performance hurdle is cleared, there must then be a showing of prejudice. *McFarland*, 127 Wn.2d at 335. This involves demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The defense need not show a different outcome is more likely than not. *See id.* ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."). Instead, the

11

No. 38425-0-III
*State v. Moreno*

requirement is that the defense show counsel's errors "undermine confidence in the outcome." *Id*.

> 1.  Did defense counsel perform deficiently by failing to request self-defense instructions as to first degree manslaughter?

To assess whether Ms. Moreno's attorney performed deficiently in failing to request self-defense instructions as to first degree manslaughter, we must first examine whether Ms. Moreno was entitled to the instructions. This requires us to examine the applicable law and how that law applies to Ms. Moreno's case. To be entitled to a particular instruction, the defense must show that a jury instruction accurately states the law and that it is justified by evidence in the case. *See State v. Edwards*, 84 Wn. App. 5, 14, 924 P.2d 397 (1996).

We first address whether it was legally accurate for trial counsel to assert that self-defense instructions are inapplicable to the offense of first degree manslaughter. The legislature has identified four types of homicide: "(1) murder, (2) homicide by abuse, (3) manslaughter, (4) excusable homicide, [and] (5) justifiable homicide." RCW 9A.32.010. Only the first three types of homicide are crimes. *See State v. Burt*, 94 Wn.2d 108, 110, 614 P.2d 654 (1980). An accidental or intentional killing in the course of self-defense falls under the fourth or fifth type: excusable homicide or justifiable homicide. *See State v. Brightman*, 155 Wn.2d 506, 525, 122 P.3d 150 (2005).

12

No. 38425-0-III
*State v. Moreno*

Because neither excusable nor justifiable homicide is a criminal act, they are both available defenses to a charge of illegal homicide, including a charge of manslaughter. *See State v. Hanton*, 94 Wn.2d 129, 133, 614 P.2d 1280 (1980). Thus, contrary to what Ms. Moreno's attorney asserted during trial, the defenses falling under the rubric of self-defense were legally available in Ms. Moreno's case as to first degree manslaughter.

Given the defenses of excusable and justifiable homicide are legally available to a charge of first degree manslaughter, Ms. Moreno would have been entitled to the instructions so long as the evidence at trial was sufficient to raise a possible claim to the two defenses. *See State v. Adams*, 31 Wn. App. 393, 395, 641 P.2d 1207 (1982). As the trial court determined, there was plausible evidence of both excusable homicide and justifiable homicide, sufficient to allow for instructions to the jury.

As relevant to Ms. Moreno's case, excusable homicide happens when, in the course of defending oneself, a defendant causes the victim's death "by accident or misfortune." RCW 9A.16.030; *see* RCW 9A.16.020(3). And as relevant to Ms. Moreno's case, when a person's intentional act of self-defense kills a person, the killing is justified if there was a "reasonable ground" to believe the person slain posed an imminent danger

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38425-0-III
*State v. Moreno*

to the defendant or another person. RCW 9A.16.050(1); *see State v. Baker*, 58 Wn. App.

222, 228, 792 P.2d 542 (1990).[2]

　　There were facts at trial to support plausible claims of excusable and justifiable

homicide. Ms. Moreno testified that, just prior to the stabbing, Mr. Allessio obtained

possession of the knife. At that point, Ms. Moreno stated she worried Mr. Allessio was

going to either hurt himself or her. Given the danger allegedly posed by Mr. Allessio,

Ms. Moreno would have been legally entitled to disarm Mr. Allessio. If, during her

purported attempt to engage in this lawful conduct, Ms. Moreno accidentally stabbed

Mr. Allessio, then her unintentional act of killing would have met the criteria for

excusable homicide. Alternatively, if during the purported struggle over the knife,

Ms. Moreno found herself in imminent peril, she may have also been justified in

intentionally stabbing Mr. Allessio in order to save herself. We note Ms. Moreno's

testimony, that she feared Mr. Allessio, was bolstered by her testimony regarding their

---

[2] Some cases have imprecisely used the phrases "justifiable homicide" and "self-defense" interchangeably. *See, e.g.*, *State v. Hendrickson*, 81 Wn. App. 397, 399, 914 P.2d 1194 (1996). But the two terms are not synonymous, and a claim of self-defense might implicate either a theory of justifiable homicide, excusable homicide, or both. *See State v. Espinosa*, 8 Wn. App. 2d 353, 362, 438 P.3d 582 (2019) (noting that a claim of self-defense might "justify *or* excuse the homicide" (emphasis added)); *Brightman*, 155 Wn.2d at 521 ("Justifiable homicide, *and indeed all self-defense*, is unmistakably rooted in the principle of necessity." (Emphasis added)).

14

No. 38425-0-III
*State v. Moreno*

turbulent history, her expert's opinion regarding the relationship between Ms. Moreno

and Mr. Allessio,[3] as well as the evidence of fresh injuries that were visible on

Ms. Moreno's face.

The evidence supported instructions on both excusable and justifiable homicide,

despite the fact that these two defenses contemplate inconsistent mental states. Justifiable

homicide requires an intentional fatal blow; it is "not available" when a fatal blow is

accidental. *State v. Hendrickson*, 81 Wn. App. 397, 400, 914 P.2d 1194 (1996). In

contrast, excusable homicide requires accidental conduct. Had Ms. Moreno been able to

clearly and consistently describe her mental state at the time of the stabbing, she may

have been entitled to an instruction only on the type of self-defense that coincided with

her testimony. *See, e.g.*, *Baker*, 58 Wn. App. at 228. But the law of self-defense "does

not require an explicit statement of intent." *Hendrickson*, 81 Wn. App. at 401. When a

defendant's memory as to their mental state at the time of the fatal blow is unclear or

imprecise, instructions on both defenses are appropriate so long as circumstantial

evidence supports either mental state. *See id.* at 400-01.

---

[3] During her case-in-chief, Ms. Moreno presented testimony from Dr. April Gerlock, who opined Ms. Moreno suffered from battered person's syndrome and posttraumatic stress disorder.

15

No. 38425-0-III
*State v. Moreno*

Because the record supports plausible defense theories of excusable and justifiable homicide, it would have been an abuse of discretion for the trial court to refuse to extend these instructions to manslaughter in the first degree. Thus, had defense counsel requested the instructions, the court would have been bound to give them.

The fact that Ms. Moreno was entitled to instructions on excusable and justifiable homicide does not necessarily mean her attorney performed deficiently in failing to ask for them. As previously noted, an attorney's performance is not ineffective if it can be explained by "legitimate trial strategy or tactics." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). But here, no conceivable strategy explains counsel's error. Ms. Moreno's trial attorney repeatedly explained they did not seek excusable and justifiable homicide instructions as to first degree manslaughter because of the mistaken belief that the defenses were not available. An attorney does not act strategically when they make a mistake of law. *See id.* at 868-69; *see also In re Pers. Restraint of Mockovak*, 194 Wn. App. 310, 322, 377 P.3d 231 (2016).

Despite defense counsel's legal error, the State argues we should decline to find deficient performance because instructions on self-defense would have contradicted Ms. Moreno's theory that Mr. Allessio was killed accidentally. We disagree. For one thing, the defense theory of accidental killing is completely consistent with the defense

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38425-0-III
*State v. Moreno*

of excusable homicide. In addition, as set forth above, because Ms. Moreno's testimony

regarding her mental state was imprecise, justifiable homicide was also available. *See*

*State v. Dyson*, 90 Wn. App. 433, 439-40, 952 P.2d 1097 (1997) ("[T]he fact that a

defendant does not recall the particular blow does not preclude the inference that [she]

intended to defend herself."). Defense counsel could have comfortably argued their theory

of the case by asserting that, at the moment of the killing, Ms. Moreno was engaged in

lawful defensive conduct and that the stabbing occurred either because Ms. Moreno

intentionally sought to repel an imminent attack or because she was reasonably acting to

disarm Mr. Allessio and accidentally stabbed him in the process. Defense counsel's

failure to request instructions on justifiable and excusable homicide as to all of the

homicide offenses at issue in this case was constitutionally deficient.

*2. Did defense counsel's deficient performance result in prejudice?*

As previously explained, a claim of constitutionally deficient performance by trial

counsel will result in reversal of a conviction only if the defense can show prejudice.

Proving prejudice involves more than showing a "'conceivable effect on the outcome.'"

*State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *State v. Crawford*,

159 Wn.2d 86, 99, 147 P.3d 1288 (2006)). But at the same time, the defense need not

show counsel's errors more than likely swayed the outcome. *Id*. Instead, the required

17

No. 38425-0-III
*State v. Moreno*

showing is a reasonable probability of a different result, "sufficient to undermine confidence in the outcome." *Id.*

Here, the record as a whole shows prejudice. The court's instructions stated the defenses of excusable and justifiable homicide applied to first and second degree murder as well as second degree manslaughter. But first degree manslaughter was treated differently. The instructions did not identify excusable or justifiable homicide as defenses to first degree manslaughter. This different treatment created a serious risk the jury would interpret first degree manslaughter as an offense that was legally different from the others. As worded, the jury instructions improperly suggested Ms. Moreno could be convicted of first degree manslaughter even if her conduct would otherwise be understood as either excusable or justifiable.

The State argues that because the jury found Ms. Moreno behaved recklessly, as required for first degree manslaughter, it could not have found she engaged in excusable homicide or justifiable homicide. It is true that a reckless killing cannot constitute either an excusable homicide or a justifiable homicide. *See Hanton*, 94 Wn.2d at 133; *State v. Norman*, 61 Wn. App. 16, 28-29, 808 P.2d 1159 (1991). This is because excusable homicide requires the absence of a culpable mental state and recklessness is a culpable

18

No. 38425-0-III
*State v. Moreno*

mental state. And justifiable homicide requires intentional conduct, not a reckless disregard for harm to others.

Despite the difference between reckless conduct and the type of mental states contemplated by excusable and justifiable homicide, the record in this case presented a real possibility for confusion. The prosecutor argued to the jury Ms. Moreno's "reckless" conduct began by following Mr. Allessio out to the vehicle. 4 RP (Feb. 18, 2021) at 1714. Given the implication from the court's instructions that excusable and justifiable homicide did not apply to the offense of first degree manslaughter (which requires proof of recklessness), there is a risk the jury believed that once it found Ms. Moreno engaged in reckless conduct by following Mr. Allessio out of the house, she was no longer entitled to act in self-defense, even if a renewed need to defend herself subsequently arose.

"[S]elf-defense instructions are subject to heightened appellate scrutiny." *State v. Woods*, 138 Wn. App. 191, 196, 156 P.3d 309 (2007). The instructions "'must more than adequately convey the law.'" *Kyllo*, 166 Wn.2d at 864 (quoting *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997)). The "instructions, read as a whole, 'must make the relevant legal standard manifestly apparent to the average juror.'" *Id.* (quoting *Walden*, 131 Wn.2d at 473).

No. 38425-0-III
*State v. Moreno*

Had the jury been properly instructed, it may well have been satisfied that, regardless of Ms. Moreno's initial reckless conduct in following Mr. Allessio out of the house, she was nonetheless legally entitled to defend herself when, according to her testimony, Mr. Allessio wrested the knife away from her and appeared ready to harm himself or her. Given this possibility, it was crucial Ms. Moreno's jury receive accurate instructions regarding the applicability of excusable and justifiable homicide.

Counsel's deficient failure to request instructions on excusable and justifiable homicide as to first degree manslaughter prejudiced the outcome in this case and deprived Ms. Moreno of a fair trial. Ms. Moreno's conviction for first degree manslaughter must be reversed.

CONCLUSION

The judgment of conviction is reversed. This matter is remanded for further proceedings.

_____
Pennell, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                          Siddoway, J.

20