**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58937-1-II |
| Respondent, | |
| v. | |
| NATHAN DREW LINDQUIST, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Following a jury trial, Nathan Drew Lindquist appeals his convictions on three counts of first degree child rape and one count of first degree child molestation.  Specifically, Lindquist argues the trial court failed to conduct an ER 404(b) analysis before it admitted evidence that Lindquist provided alcohol and marijuana to the victim, F.L.P.  Lindquist also argues that he received ineffective assistance of counsel because his counsel failed to object to the alcohol and marijuana evidence and because his counsel elicited damaging testimony from F.L.P. on cross-examination.  Finally, Lindquist advances two additional ineffective assistance of counsel claims in a statement of additional grounds (SAG).[1]

Lindquist did not object to the alcohol and marijuana evidence during trial, and he fails to cite or argue any legal authority that would permit this court's review of an issue raised for the first time on appeal.  Therefore, we do not consider whether the trial court erred with regard to the marijuana and alcohol evidence.

---

[1]  RAP 10.10(a).

With regard to Lindquist's ineffective assistance of counsel claim based on defense counsel's failure to object to the marijuana and alcohol evidence, any objection to the evidence would have failed. Therefore, Lindquist cannot establish deficient performance for his counsel's failure to object. Additionally, with regard to Lindquist's argument that counsel was deficient by eliciting damaging facts on cross-examination, Lindquist fails to rebut the strong presumption that counsel's performance was effective by showing the absence of any conceivable legitimate tactic explaining counsel's performance. Thus, Lindquist's ineffective assistance of counsel claims fail.

Finally, Lindquist's SAG claims fail to inform this court of the nature and occurrence of the other alleged instances of ineffective assistance of counsel. Accordingly, we do not address Lindquist's SAG claims.

We affirm Lindquist's convictions.

FACTS

A. BACKGROUND

F.L.P. was born to S.D.-P. in 2008. In 2011, when F.L.P. was two years old, S.D.-P. went to prison.[2] S.D.-P. left F.L.P. in the care of S.D.-P.'s stepmother. However, S.D.-P.'s stepmother was unable to care for F.L.P., so S.D.-P. placed F.L.P. in the care of Nathan Lindquist, a family friend, when F.L.P. was approximately four or five years old.

Lindquist lived with his aunt, Sandra Belair-St. Clair, and Belair-St. Clair's grandson, T.B. T.B. was two years older than F.L.P. They all lived in Belair-St. Clair's home on Broussard Street (Broussard House) in Bremerton. F.L.P. initially shared a room with T.B., but F.L.P. later had her

---

[2] S.D.-P. was released from prison in 2015, but was almost immediately re-incarcerated until 2021.

2

own room when she was approximately eight or nine years old. Lindquist primarily lived in a trailer on the property, but later moved back into the house. Additionally, other family members intermittently lived at the Broussard House during this time.

In 2014, when F.L.P. was six years old, S.D.-P. agreed to a formal guardianship for F.L.P., with Lindquist being F.L.P.'s guardian.

When F.L.P. was around seven years old, Lindquist began showing her pornographic videos and nude magazines. Each night, after the household went to sleep, Lindquist would wake F.L.P. and take her back to his trailer or bedroom to watch porn. While watching porn, Lindquist would masturbate and rub F.L.P.'s breasts and the inside of her vagina. Lindquist would regularly have F.L.P. perform oral sex on him.

When F.L.P. was approximately 10 years old, she and Lindquist moved to another home in Bremerton (Arrowhead House), where they lived with Lindquist's mother, cousin, and the cousin's baby. While living at the Arrowhead House, in addition to putting his hands inside F.L.P.'s vagina and having F.L.P. perform oral sex on him, Lindquist began regularly giving F.L.P. marijuana and alcohol, and anally penetrated her.

Lindquist would buy things for F.L.P. or take her on trips in exchange for sexual acts.

> He would just tell me that he would take me to do stuff, like trips or jewelry. He would give it to me, and then say, "Well, I got you that. What are you going to give me?"

2 Verbatim Rep. of Proc. (VRP) (Aug. 24, 2023) at 431. On one occasion, Lindquist took F.L.P. to a motel. While at the motel, Lindquist sexually abused her in the same fashion as at both residences. Lindquist told F.L.P. that she could not tell anyone what he did to her because "he

would go away for a very long time." 2 VRP (Aug. 24, 2023) at 427. F.L.P. viewed Lindquist as a father and did not want him to go away.

In 2020, when F.L.P. was around 11 or 12 years old, F.L.P.'s father, C.P., gained custody of her,[3] and F.L.P. left Lindquist to live with C.P. After F.L.P. went to live with C.P., she did not see Lindquist again.

When S.D.-P. was released from prison in 2021, F.L.P. began living with S.D.-P. and has since remained with S.D.-P.[4] After F.L.P. started living with S.D.-P., S.D.-P. noticed that F.L.P. engaged in self-harming behaviors, such as cutting and burning herself. S.D.-P. sought counseling for F.L.P., and on the way to a counseling appointment, F.L.P. "broke down" and told S.D.-P. that Lindquist had sexually abused her. 2 VRP (Aug. 24, 2023) at 487. F.L.P. then disclosed to a counselor that Lindquist had sexually abused her for years.

B.      PROCEDURAL HISTORY

The State charged Lindquist with three counts of first degree child rape (Counts I-III) and one count of first degree child molestation (Count IV) for events that occurred between 2014 and 2020. The State also alleged the aggravating circumstances of ongoing pattern of sexual abuse and abuse of a position of trust for each charge.

Lindquist denied all charges. The case was tried to a jury.

---

[3] C.P. was not present in F.L.P.'s life until she was 8 or 9 years old.

[4] C.P. still has legal custody of F.L.P., but S.D.-P. is in the process of regaining custody.

1.      Pretrial Motion

The State filed several motions in limine.  Among other issues, the State sought an order prohibiting "reference to any witness' alleged prior drug and/or alcohol use or addiction, unless previously approved by the Court via offer of proof."  Clerk's Papers (CP) at 54.  During the pretrial hearing, defense counsel did not object to the State's motion in limine regarding reference to drug and or alcohol use or addition.

> [DEFENSE COUNSEL]: I suppose no objection.  One of the allegations in this case is going to be that [Lindquist] engaged in drug activity with [F.L.P.] when she was a small child, assuming [the State] intend[s] to elicit that information.
>
> [STATE]: I think [the motion is] anything not related to the case, the facts of the case, so anything previous to or subsequent to.
>
> [TRIAL COURT]: Okay.  I'll grant that one.  I do recognize that—I did a brief look at the Information, just the very first part of it.  I did see that particular allegation [of drug activity with F.L.P.] in the Information.  That obviously would be appropriate for . . . the State to bring in.

1 VRP (Aug. 21, 2023) at 13.

2.      Trial

During opening statements, defense counsel argued that F.L.P. was not credible, in part because despite living in the same households as several other people, no one in either household could corroborate F.L.P.'s version of events.  Because of the presence of others and their testimony, defense counsel asserted that F.L.P.'s allegations regarding Lindquist's abuse did not happen.

F.L.P. testified during trial to the facts described above.  With regard to the issue of Lindquist providing F.L.P. marijuana and alcohol, the State inquired of F.L.P. as follows:

> [STATE]:  . . . Was there anything else that [Lindquist] did that made you uncomfortable?  Do you remember any specific times or was it—

[F.L.P.]:     When I got a little bit older, he smoked weed, so he would have me sit in his lap in the bathroom and smoke weed.

[STATE]:     Do you recall how old you were the first time that happened?

[F.L.P.]:     Like ten or 11.

[STATE]:     Okay. Do you remember which house you were in?

[F.L.P.]:     The Arrowhead house, but he had a lot of weed when he was at the other house too.

. . . .

[STATE]:     Okay. Did he do—after he would make you smoke weed, would he do anything—would you guys do anything?

[F.L.P.]:     It's always the same.

[STATE]:     Okay. Was there—was there ever a time he did anything differently or was it always—I guess what you've kind of described as the watching the porn and the touching, and then would there always—I think you said he would make you suck his dick. Was that always an every-time occurrence or was that something that happened just some of the time?

[F.L.P.]:     When he started having me smoke weed, he would—sometimes he would give me alcohol as well, and when he did that, he would—he would put it in my butt, and I would—I would start crying, and I would tell him to stop.

[STATE]:     Okay. Was this at the Arrowhead residence or was it at both residences?

[F.L.P.]:     Arrowhead.

[STATE]:     Okay. So would that be—would that occur in his room, then?

[F.L.P.]:     Yeah.

2 VRP (Aug. 24, 2023) at 437-38. Defense counsel did not object.

Also on direct examination, the State questioned F.L.P. about the events at the motel.

[STATE]:   Okay.  What do you remember happening next?

[F.L.P.]:   He put something on his tablet and started touching me.

[STATE]:   In a similar way to what he would do at both residences?

[F.L.P.]:   Yeah.

[STATE]:   Do you remember if he had kept your clothes on or did—

[F.L.P.]:   I didn't have clothes on.

. . . .

[STATE]:   Okay.  What did he do after touching you?

[F.L.P.]:   I don't remember.

[STATE]:   You don't remember.  Did you guys go to sleep after that?

[F.L.P.]:   I think so.

2 VRP (Aug. 24, 2023) at 435-36.

On cross-examination of F.L.P., defense counsel also inquired about the events at the motel.

[DEFENSE COUNSEL]:   Okay.  Do you remember anything else happen to you, like sex acts besides him just touching you?

[F.L.P.]:   I don't remember.

[DEFENSE COUNSEL]:   Okay.  I know this is hard to talk about.  Do you know if you have talked about these things before?

[F.L.P.]:   When you guys interviewed me.  That's it.

[DEFENSE COUNSEL]:   Okay.  And that was like a month ago maybe?

[F.L.P.]:   Yeah.

[DEFENSE COUNSEL]:   Okay.  Do you remember if at that point you indicated that you had had anal sex on that occasion?

[F.L.P.]:                              Yeah.

[DEFENSE COUNSEL]:    Is that what you think did happen?

[F.L.P.]: Yeah.

[DEFENSE COUNSEL]:    Okay.  And after that happened—I don't want to talk too much about this, move past it, but did you have any bleeding or anything?

[F.L.P.]:                              Yeah.

[DEFENSE COUNSEL]:    Okay. And that was like in your butt, that type of thing?

[F.L.P.]:                              (Nods head).

2 VRP (Aug. 24, 2023) at 468-69.

During closing arguments, the State identified for the jury that the instance where Lindquist anally penetrated F.L.P. at the motel was the basis for the first degree child rape charge in Count I. For Count II, the State identified oral sex F.L.P. performed on Lindquist at the Broussard House. Finally, for Count III, the State considered instances at the Arrowhead House when Lindquist would provide marijuana to F.L.P. and would anally penetrate her.

In closing arguments, defense counsel challenged F.L.P.'s veracity and memory about the events that occurred, arguing that F.L.P. was not credible.  Defense counsel also emphasized that the testimony from other witnesses who lived in the same household did not corroborate F.L.P.'s version of the events; thus, it was unlikely Lindquist would have gone unnoticed when he allegedly abused F.L.P.

3.    Verdict

The jury found Lindquist guilty on all counts. The jury also found the aggravating circumstances of ongoing pattern of sexual abuse and abuse of position of trust on all counts.

Lindquist appeals his convictions.

ANALYSIS

Lindquist argues that (1) the trial court erroneously admitted propensity evidence without conducting an ER 404(b) analysis and (2) he received ineffective assistance of counsel because defense counsel failed to object to the allegedly improper 404(b) evidence and because defense counsel elicited damaging testimony from F.L.P. on cross-examination. Lindquist also advances two additional ineffective assistance of counsel claims in his SAG. We hold that Lindquist's challenges fail.

A.    MARIJUANA AND ALCOHOL EVIDENCE

Lindquist argues that the trial court erred when it allowed evidence that Lindquist provided marijuana and alcohol to F.L.P. on numerous occasions and failed to conduct an ER 404(b) analysis on the record before admitting the evidence. The State argues that Lindquist failed to preserve the issue for appeal, and in the alternative, the evidence that Lindquist provided F.L.P. marijuana and alcohol was admissible. We agree with the State that Lindquist failed to preserve the issue for appeal.

1.    Legal Principles

Evidence of a person's "other crimes, wrongs, or acts" is inadmissible to prove a person's character or that a person acted in conformity with that character. ER 404(b);[5] *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). However, such evidence may be admissible for other purposes, such as proof of motive or intent. ER 404(b).

Also, "a party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial." *State v. Kelly*, 19 Wn. App. 2d 434, 450, 496 P.3d 1222 (2021), *review denied*, 199 Wn.2d 1002 (2022). Appellate courts "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a); *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009).

However, a party may raise an error for the first time on appeal if "'(1) the error is manifest and (2) the error is truly of constitutional dimension.'" *State v. J.W.M.*, 1 Wn.3d 58, 90, 524 P.3d 596 (2023) (quoting *O'Hara*, 167 Wn.2d at 98); RAP 2.5(a)(3). Generally, evidentiary errors under ER 404(b) are not of constitutional magnitude. *State v. Yusuf*, 21 Wn. App. 2d 960, 974, 512 P.3d 915, *review denied*, 200 Wn.2d 1011 (2022); *Gresham*, 173 Wn.2d at 433.

2.    Lindquist Failed to Preserve Alleged Error for Review

Lindquist argues that F.L.P.'s testimony that he provided her with marijuana and alcohol was highly prejudicial, irrelevant to his sexual abuse charges, and made the jury more likely to convict him. However, Lindquist did not object to F.L.P.'s mention of marijuana or alcohol when

---

[5] ER 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

she testified.[6]  Moreover, Lindquist fails to cite RAP 2.5(a) or provide any argument supporting this court's review of the alleged evidentiary error raised for the first time on appeal.  *State v. Garcia*, 177 Wn. App. 769, 786, 313 P.3d 422 (2013), *review denied*, 179 Wn.2d 1026 (2014).  Thus, Lindquist has failed preserve this issue for review, and we do not consider whether the trial court erred with regard to the marijuana and alcohol evidence.  RAP 2.5(a); *O'Hara*, 167 Wn.2d at 97-98.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Lindquist argues that he received ineffective assistance of counsel when (1) defense counsel failed to object to F.L.P.'s testimony about Lindquist giving her marijuana and alcohol, and (2) defense counsel elicited "prejudicial, extremely damaging testimony" from F.L.P. on cross-examination.  Br. of Appellant at 27.  Lindquist also raises two additional claims of ineffective assistance of counsel in a SAG.  We hold that Lindquist's claims of ineffective assistance fail.

1.      Legal Principles

Criminal defendants have a constitutional right to effective assistance of counsel.  U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021).  We review claims of ineffective assistance of counsel de novo.  *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).  To prevail on a claim of ineffective assistance, a defendant must show "both (1) deficient performance and (2) resulting prejudice."  *Id.* at 457-58.  If either element

---

[6] We note that Lindquist's briefing implies that F.L.P.'s testimony about marijuana and alcohol described events separate from the sexual abuse; however, the record clearly shows that F.L.P.'s testimony was closely tied to the instances of sexual abuse.

of the test is not satisfied (deficient performance or prejudice), the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Counsel's performance is deficient if it falls below "an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption that counsel's performance was reasonable. *Estes*, 188 Wn.2d at 458. A counsel's conduct is not deficient if it can be characterized as legitimate trial strategy or tactics. *Id.* To rebut the strong presumption that counsel's performance was reasonable, "the defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (emphasis in original) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)), *cert. denied*, 574 U.S. 860 (2014).

Trial tactics include when and how counsel makes objections during trial. *Vazquez*, 198 Wn.2d at 248. For instance, counsel may forego an objection if he or she wishes to avoid emphasizing certain evidence. *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541, *review denied*, 193 Wn.2d 1038 (2019). If a defendant bases his claim of ineffective assistance on counsel's failure to object, "the defendant must show that the objection would likely have succeeded." *Id.*

Additionally, "[c]ourts generally entrust cross-examination techniques . . . to the professional discretion of counsel." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004). For claims that counsel did not effectively cross-examine a witness, courts assess whether counsel's approach fell "within the range of reasonable representation." *Id.* (stating, "'[i]n retrospect we might speculate as to whether another attorney could have more efficiently attacked the credibility of . . . witnesses . . . . The extent of cross-examination is something a lawyer must

12

decide quickly and in the heat of the conflict. This . . . is a matter of judgment and strategy'" (alterations in original) (quoting *State v. Stockman*, 70 Wn.2d 941, 945, 425 P.2d 898 (1967))). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863.

"Prejudice exists if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Estes*, 188 Wn.2d at 458 (quoting *Kyllo*, 166 Wn.2d at 862). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Vazquez*, 198 Wn.2d at 248 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

2.      Failure to Object

Lindquist argues that he received ineffective assistance when defense counsel failed "to object when the State presented testimony that [Lindquist] regularly plied F.L.P. with alcohol and marijuana without engaging in an ER 404(b) hearing to weigh admissibility." Br. of Appellant at 20. Lindquist bears the burden of showing that had defense counsel objected to F.L.P.'s testimony about the marijuana and alcohol, the objection would have been sustained and the evidence would have been ruled inadmissible. *Crow*, 8 Wn. App. 2d at 508. Lindquist fails.

Lindquist contends that the evidence of marijuana and alcohol "was not relevant to motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Br. of Appellant at 23. However, Lindquist fails to elaborate and only makes the blanket statement that, on hearing such evidence, the "jury [would] conclude that if Mr. Lindquist was the type of person who would furnish marijuana and alcohol to a child, he is also the type of . . . person who would rape, molest or otherwise sexually abuse F.L.P." Br. of Appellant at 24. Lindquist's

argument is non sequitur. To assume that an individual's provision of drugs and alcohol to a minor makes that individual more likely to sexually abuse minors is illogical.

Here, F.L.P. testified that Lindquist gave her marijuana and alcohol *in conjunction* with sexually abusing her. The evidence did not describe circumstances where, on occasions separate from or prior to the sexual abuse incidences, Lindquist provided F.L.P. with drugs and alcohol. Thus, even assuming Lindquist's counsel raised an ER 404(b) objection, the evidence could reasonably be construed to fall within a permissible purpose under ER 404(b), i.e., the evidence demonstrated Lindquist's plan of sexual abuse was to place F.L.P. in an altered state such that she might be less likely to protest. Moreover, the evidence provided context for the depth of Lindquist's abuse of F.L.P. *State v. Dillon*, 12 Wn. App. 2d 133, 148, 456 P.3d 1199 (stating, "'[u]nder res gestae or same transaction exception to ER 404(b), evidence of other crimes or bad acts is admissible to complete the story of a crime or to provide the immediate context for events close in both time and place to the charged crime'" (internal quotation marks omitted) (quoting *State v. Lillard*, 122 Wn. App. 422, 432, 93 P.3d 969 (2004), *review denied*, 154 Wn.2d 1002 (2005))), *review denied*, 195 Wn.2d 1022 (2020). Therefore, the evidence was admissible and an objection to the evidence would not have been sustained.[7] Because Lindquist fails to show that an objection would have led to the exclusion of the challenged evidence, Lindquist's claim of ineffective assistance of counsel based on counsel's failure to object to marijuana and alcohol evidence fails.

---

[7] We note that in its ruling on the State's motion in limine 8, the trial court stated that the drug and alcohol activity "would be appropriate . . . for the State to bring in." 1 VRP (Aug. 21, 2023) at 13. Lindquist does not challenge on appeal the trial court's in limine ruling.

3.      Eliciting Damaging Testimony

Lindquist argues he received ineffective assistance of counsel when "his attorney elicited prejudicial, extremely damaging testimony during cross-examination of F.L.P." Br. of Appellant at 27. Lindquist asserts that there "is a reasonable probability that the outcome in Count 1 would have been different but for defense counsel's inexplicable line of questioning regarding penetrative sex during cross examination of F.L.P." Br. of Appellant at 32.

The State concedes that on direct, F.L.P. did not explicitly say that Lindquist anally penetrated her at the motel. Indeed, F.L.P. only testified that Lindquist sexually touched her in the same fashion as at both residences. However, the State argues that F.L.P.'s "direct testimony was sufficient to establish the crime" and that defense counsel's questioning was consistent with the defense strategy of the case; therefore, Lindquist did not receive ineffective assistance of counsel. Br. of Resp't at 21.

Here, defense counsel employed a conceivable and legitimate tactical reason for his line of questioning on cross-examination of F.L.P. Thus, Lindquist cannot establish deficient performance and his claim of ineffective assistance of counsel fails.

Lindquist anally penetrating F.L.P. at the motel formed the basis for the first degree child rape charge in Count I. The record shows that when the State asked F.L.P. about events at the motel, F.L.P. did not explicitly state Lindquist anally penetrated her:

[STATE]:   Okay. What do you remember happening next?

[F.L.P.]:    He put something on his tablet and started touching me.

[STATE]:   In a similar way to what he would do at both residences?

[F.L.P.]:    Yeah.

[STATE]: Do you remember if he had kept your clothes on or did—

[F.L.P.]: I didn't have clothes on.

2 VRP (Aug. 24, 2023) at 435. On cross-examination, defense counsel was more direct with his inquiry:

[DEFENSE COUNSEL]: Okay. Do you remember anything else happen to you, like sex acts besides him just touching you?

[F.L.P.]: I don't remember.

[DEFENSE COUNSEL]: Okay. I know this is hard to talk about. Do you know if you have talked about these things before?

[F.L.P.]: When you guys interviewed me. That's it.

[DEFENSE COUNSEL]: Okay. And that was like a month ago maybe?

[F.L.P.]: Yeah.

[DEFENSE COUNSEL]: Okay. Do you remember if at that point you indicated that you had had anal sex on that occasion?

[F.L.P.]: Yeah.

[DEFENSE COUNSEL]: Is that what you think did happen?

[F.L.P.]: Yeah.

[DEFENSE COUNSEL]: Okay. And after that happened—I don't want to talk too much about this, move past it, but did you have any bleeding or anything?

[F.L.P.]: Yeah.

[DEFENSE COUNSEL]: Okay. And that was like in your butt, that type of thing?

[F.L.P.]: (Nods head).

| [DEFENSE COUNSEL]: | You're nodding. Okay. |
|---|---|
| [F.L.P.]: | Yes. |
| [DEFENSE COUNSEL]: | And had that same thing happened where you'd had bleeding at other times at the Broussard house? |
| [F.L.P.]: | Yes. |

2 VRP (Aug. 24, 2023) at 468-69.

Like the State on direct examination, defense counsel framed his inquiry to F.LP. in terms of what she remembered. On cross-examination, F.L.P. initially stated she *did not remember* what happened other than Lindquist "touching her," but then changed her testimony and explicitly stated that Lindquist anally penetrated her. Eliciting this testimony can call into question F.L.P.'s veracity and memory about the events that occurred, particularly when on direct examination, she did not testify to the anal penetration. This is consistent with the defense's theory of the case, which was that F.L.P.'s memory was questionable and she was simply not credible. Indeed, defense counsel's strategy in challenging F.L.P's memory on cross-examination was confirmed by F.L.P. on redirect examination by the State when F.L.P. testified that her memory about her childhood was "[n]ot very good." 2 VRP (Aug. 24, 2023) at 476.

If defense counsel could successfully undermine F.L.P.'s credibility, Lindquist theoretically had a chance at acquittal on all charges. Indeed, defense counsel's closing arguments show that the defense strategy was for an acquittal on all charges:

> And frankly, I mean, you're likely going to determine that all of these acts they happened or none of them did. You're likely gonna determine that there's proof beyond a reasonable doubt that these things happened or they didn't.

17

So, I'm not gonna focus too much into each of the three counts of rape or the molestation specifically and get into each specific instance. I'm just gonna talk about the evidence in a general sense.

1 VRP (Aug. 29, 2023) at 179-80.

Given that the charges against Lindquist ultimately come down to a credibility determination, it is a conceivable, legitimate trial tactic to highlight F.L.P.'s faulty memory and inconsistencies in F.L.P.'s testimony. *Grier*, 171 Wn.2d at 42; *Davis*, 152 Wn.2d at 720.

> Courts generally entrust cross-examination techniques . . . to the professional discretion of counsel. . . . "In retrospect we might speculate as to whether another attorney could have more efficiently attacked the credibility of . . . witnesses . . . . The extent of cross-examination is something a lawyer must decide quickly and in the heat of the conflict. This . . . is a matter of judgment and strategy."

*Davis*, 152 Wn.2d at 720 (third, fourth, and fifth alterations in original) (quoting *Stockman*, 70 Wn.2d at 945).

"[A]n attorney's performance is not ineffective if it can be explained by 'legitimate trial strategy or tactics.'" *State v. Moreno*, 26 Wn. App. 2d 681, 694-95, 529 P.3d 431 (2023) (quoting *Kyllo*, 166 Wn.2d at 863). Furthermore, courts indulge a "strong presumption" that counsel is effective. *Vazquez*, 198 Wn.2d at 247. Lindquist "bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 42 (emphasis in original) (quoting *Reichenbach*, 153 Wn.2d at 130). Because defense counsel's performance can be explained by a conceivable trial strategy, we hold that Lindquist has failed to meet his burden to show that defense counsel's performance was deficient. Because Lindquist does not establish deficient performance, his claim of ineffective assistance fails.

4.     SAG Claims

Lindquist alleges two instances of ineffective assistance of counsel in a SAG.  The entirety of Lindquist's first claim states: "Ineffective assistance of counsel by failing to obtain medical, mental health, school records as well as my work time records.  With these records [there] is a reasonable probability that the outcome of the trial would have been different."  SAG at 1.

The entirety of Lindquist's second claim states: "Ineffective assistance of counsel by failing to have [an] investigator talk to all potential witness[es].  [I]f not for this lack of proper investigation [there] is a reasonable probability that the outcome of the trial would have been different."  SAG at 1.

While defendants are not required to reference the record or cite legal authorities, we "will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors."  RAP 10.10(c).  Lindquist's first claim fails to provide any detail or argument as to whose records his counsel should have obtained, why those records were relevant or what they would have shown, or how those records would have changed the outcome of the trial.  Similarly, Lindquist's second claim does not explain what witnesses should have been interviewed and what information from those witnesses would have changed the outcome of the trial.  Therefore, pursuant to RAP 10.10(c), we do not address Lindquist's SAG claims.

No. 58937-1-II

CONCLUSION

We affirm Lindquist's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

I concur:

Maxa, J.

20

CRUSER, C.J. (dissenting in part)—I respectfully dissent from section B.3 of the majority opinion in which the majority holds that defense counsel's elicitation of highly prejudicial testimony that provided the only evidence supporting an element of count I was not deficient performance. I would hold that the elicitation of this testimony was deficient performance and that this deficient performance was prejudicial to Lindquist. Because there was insufficient evidence to support the conviction on count I absent this testimony, I would reverse and dismiss that conviction with prejudice. I concur with the remainder of the majority's opinion.

Lindquist argues that he received ineffective assistance of counsel when defense counsel elicited highly prejudicial testimony from FLP during cross-examination. To prevail on a claim of ineffective assistance of counsel, Lindquist must show "(1) that defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness; and (2) that the deficient performance resulted in prejudice, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

"The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). There is a strong presumption that counsel performed reasonably, but this presumption can be overcome when " 'there is no conceivable legitimate tactic explaining counsel's performance.' " *Id.* (quoting *Reichenbach*, 153 Wn.2d at 130).

The majority concludes that Lindquist fails to rebut the strong presumption that his counsel's performance was reasonable because the testimony counsel elicited from FLP on cross-

examination was for the legitimate tactical purpose of demonstrating FLP's questionable memory and credibility. I disagree.

Although demonstrating a witness' questionable memory and credibility can have a tactical purpose, we cannot ignore the context here. Challenging a witness' memory and credibility by intentionally introducing the *only* evidence supporting an element of one of the charged offenses is clearly not objectively reasonable even if it arguably also served a tactical purpose.[8] This is particularly so when counsel could have introduced similar, less specific evidence regarding FLP's memory and credibility by merely pointing out that she may have been more specific in her interview a month earlier rather than asking her about an incident that would provide the only evidence supporting an element of the crime. For instance, as the majority recognizes, the State was able to elicit testimony about FLP's memory by simply asking her, "[H]ow is your memory of your childhood?" 2 Verbatim Rep. of Proc. (VRP) (Aug. 24, 2023) at 476. Accordingly, I would hold that Lindquist established deficient performance on this basis.

I would also hold that this deficient performance resulted in prejudice.

To establish prejudice, the defendant must show that " 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.' " *Grier*, 171 Wn.2d at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177

---

[8] Introducing such evidence when the State has already presented evidence of the element may not be grounds for an ineffective assistance of counsel claim, but that is not what happened in this case. *See Hartman v. Yost*, 2025 WL 2081194, at *8-9 (6th Cir. July 24, 2025) (fact that counsel's cross examination elicited additional evidence of force during impeachment of witness was not deficient performance when State had already presented evidence of force); *State v. Hartman*, 64 N.E.3d 519, 542-43 (Ohio Ct. App. 2016) (it was not deficient performance for counsel to present evidence of factual matters that could have helped State prove an element of the crime when "it was at least arguable that the State had presented sufficient evidence" of that element).

(2009)). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

To prove the first degree child rape charged in count I, the State had to prove, among other elements, that Lindquist had "sexual intercourse" with FLP. RCW 9A.44.073(1)[9]. To prove sexual intercourse, the State had to prove either penetration or "sexual contact between persons involving the sex organs of one person and the mouth or anus of another person." RCW 9A.44.010(14)(c).[10]

The State elected to limit count I to the incident that occurred in the hotel room. The only evidence of contact between Lindquist and FLP at the hotel was FLP's testimony that Lindquist had "touch[ed]" her in a manner similar to the touching that occurred at other locations, 2 VRP (Aug. 24, 2023) at 435-36, and the evidence that was improperly elicited by defense counsel during FLP's cross-examination. FLP had testified to a variety of sexual contact with Lindquist at the other locations, some of which involved penetration or sexual contact between the sex organs of one person and the mouth or anus of another and some of which did not. But without the improper testimony, FLP testified only to nonspecific touching at the hotel, and there is a reasonable probability that but for the improper testimony the jury would not have found penetration or sexual contact between the sex organs of one person and the mouth or anus of another related to count I. Accordingly, I would hold that defense counsel's deficient performance in eliciting the only

_____

[9] This statute was amended in 2021. LAWS OF 2021, ch. 142 §2. Because the amendments do not change the relevant text, we cite to the current version of the statute.

[10] This statute was amended in 2020 and 2023. LAWS OF 2023, ch. 470 § 3007; LAWS OF 2020 ch. 312 § 707. Because the amendments did not change the relevant text, we cite to the current version of the statute.

evidence of penetration or the required type of sexual contact at the hotel was prejudicial and that Lindquist received ineffective assistance of counsel with regard to count I.

In addition, I would hold that without the improper evidence, the evidence was insufficient to support the conviction on count I. Again, to prove first degree child rape, the State had to present evidence of sexual intercourse. Without the improper testimony, the evidence established only "touching" at the hotel. Without more, the State failed to present evidence of penetration or sexual contact involving the sex organs of one person and the mouth or anus of another. Accordingly, I would also hold that because the evidence would be insufficient to support the conviction that the conviction on count I should be reversed and dismissed with prejudice.

CRUSER, C.J.